No. 91-098

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

IN THE MATTER OF THE CUSTODY
AND PARENTAL RIGHTS OF
N.J. AND A.J.,

      Youths in Need of Care.

FILED

AUG 12 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Leo J. Gallagher, Attorney at Law, Helena, Montana

     For Respondent:

          Hon. Marc Racicot, Attorney General, Helena, Montana
Micheal S. Wellenstein, Assistant Attorney General,
Helena, Montana
Mike McGrath, Lewis and Clark County Attorney,
Helena, Montana; Carolyn Clemens, Deputy County
Attorney, Helena, Montana
Randi Hood, Public Defender's Office, Helena,
Montana
Nick Jacques, Attorney at Law, Helena, Montana

Submitted on Briefs:  July 2, 1991

Decided:  August 12, 1991

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

G.J. (Mother) appeals an order of the District Court of the First Judicial District, Lewis and Clark County, which terminated her parental rights to her two children, N.J. and A.J. We affirm.

Mother presents one issue on appeal; we rephrase this issue as follows:

Did the District Court abuse its discretion when it terminated Mother's parental rights to N.J. and A.J.?

Mother married S.J. (Father) at an early age. The couple had two children, N.J., born September 27, 1986, and A.J., born August 16, 1988. The couple separated in January 1989. Mother testified that the couple separated because she "[c]ouldn't handle [Father's] drugs and his booze and he wasn't coming home at nights." Mother further testified that in May 1989, she left her children with B.J., her mother and the children's grandmother, and departed to Nevada because she "decided to screw off my life too. . . ."

The record indicates that Mother and Father share a history of chronic drug and alcohol abuse. Additionally, the record indicates that Mother has a history of emotional problems stemming from her childhood. B.J. testified that Mother has a problem with being truthful.

When Father discovered that Mother had left for Nevada leaving the children with B.J., he retrieved the children from B.J. and took them to his residence in Wickes, Montana. Mother testified that she was unaware that Father had taken the children from B.J.

2

until shortly before she returned to Montana on July 7, 1989. Apparently, however, the children remained living with Father following Mother's return to Montana.

On July 31, 1989, Father left the children with a babysitter but failed to return to pick them up. On August 4, 1989, the babysitter attempted but failed to contact Mother to pick up the children. The babysitter then took the children to the Jefferson County Sheriff's Office to report their abandonment. The Jefferson County Sheriff's Office notified Lewis and Clark County Department of Family Services (Department) of the children's situation. The Department had knowledge of these children as it had investigated past reports of alleged neglect of the children starting in September 1988. Following a conversation between the Department and the babysitter, the children remained at the home of the babysitter over the next few days with B.J. providing the babysitter her assistance with the children.

Department records indicate that Father returned on August 7, 1989. Additionally, Department records dated August 7, 1989, indicate that Mother contacted the Department about the children, but stated that she could not provide adequate care for them as she was then living in a friend's "filthy" house.

On August 8, 1989, the Department petitioned the District Court for temporary investigative authority and protective services regarding the children. On August 8, 1989, the District Court, granted the Department temporary investigative authority for six

3

for depression. During this time, Mother was also physically abused by her boyfriend, S.W.

Mother returned to Helena in January 1990, and indicated to Harris her desire to begin implementation of a treatment plan. On February 28, 1990, Mother agreed to a treatment plan previously prepared by Harris on December 29, 1989.

Father's whereabouts were unknown at this time. He was notified by publication of a March 2, 1990 hearing concerning the Department's December 5, 1989 petition for protective services and adjudication of the children as youths in need of care. Accordingly, the Department was unable to discuss with Father and Father was unavailable to agree to the implementation of the treatment plan. However, later when Father's whereabouts were determined, Father expressed no interest in regaining custody of his children. The last time Father expressed interest in regaining custody of the children was August 1989.

The District Court approved the treatment plan at the March 2, 1990 hearing. The treatment plan set forth the following goals:

> Goal I: To obtain chemical dependency evaluations and follow the recommendations of the evaluation.
>
> Goal II: [Mother] and [Father] will have psychological evaluations and follow the recommendations of the evaluation.
>
> Goal III: [Mother] or [Father] will provide a stable environment for the children that will meet their emotional, psychological, and physical needs.

5

Additionally, the District Court determined the children to be youths in need of care in an order dated March 6, 1990.

In an effort to meet the first goal of the treatment plan, Mother successfully completed an out-patient treatment program at Boyd Andrew Chemical Dependency Care Center (Center) on April 19, 1990, after the Center evaluated and diagnosed her as chemically dependent. Mother then began the program's required after-care program, but she quit attending the after-care program in June 1990 because she did not want to discuss at group therapy sessions the trauma she suffered as a child. She testified on direct examination at the termination hearing that she would have continued attending the after-care program if she could have attended one-to-one sessions instead of group sessions. The after-care program, however, offered the one-to-one sessions, which Mother for a time attended. On cross-examination, Mother testified that she did not know why she quit attending the one-to-one sessions.

The second goal of the treatment plan required Mother to submit to and obtain a psychological evaluation and abide by the evaluation's recommendations. Mother failed to submit to a psychological evaluation despite repeated reminders from her social workers to schedule a time with a psychologist for an evaluation. Mother admitted that she lied to one of her social workers when, at one point, she told him that she was undergoing a psychological evaluation.

6

The third goal of the treatment plan was that Mother would provide a stable environment for her children. Mother failed to provide adequate housing for the children and failed to maintain steady employment. Mother failed to qualify for general assistance through Aid to Families with Dependent Children because she refused to participate in a project work program.

Mother testified that, in May 1990, while she was attempting to comply with the treatment plan, she was hospitalized because she intentionally "OD'ed on Tylenol." Mother further testified that some time later, she was hospitalized for depression. The record indicates that regarding the last hospitalization for depression, Mother was admitted to an emergency room for taking pills.

On September 14, 1990, six months after the court approved the treatment plan, the Department petitioned the District Court to terminate the parental rights of Mother and Father to the children because the goals of the treatment plan were unmet. The District Court conducted a hearing on the Department's petition on November 5, 1990. Although Father was notified of this hearing, he did not attend. Father's court-appointed counsel appeared at this hearing but the District Court excused him from participating in the proceeding after counsel explained that he had no contact with Father and had no evidence to rebut any of the evidence to be presented. Mother and her court-appointed counsel attended this hearing. On November 20, 1990, the District Court terminated the

7

parental rights of Mother and Father to A.J. and N.J. On December 18, 1990, the District Court amended its November 20, 1990 ruling in an order nunc pro tunc dated December 18, 1990, which amendment does not relate to any issue in this appeal. From this order, Mother appeals.

Did the District Court abuse its discretion when it terminated mother's parental rights to N.J and A.J.?

Mother argues that the District Court erred when it found that her "conduct or condition rendering her unfit as a parent was unlikely to change within a reasonable time." She further argues that although she technically failed to meet the goals of the treatment plan by not getting a psychological evaluation, she did, on a number of occasions, attempt to get an evaluation completed. She argues that she has been drug-free since February 1990. And, she argues that she has secured a place to live for her and the children.

Section 41-3-609(2), MCA, provides in pertinent part:

> In determining whether the conduct or condition of the parents is unlikely to change within a reasonable time, the court must enter a finding that continuation of the parent-child legal relationship will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care. In making such determinations, the court shall consider but is not limited to the following:

8

(a)    emotional illness, mental illness, or mental deficiency of the parent of such duration or nature as to render the parent unlikely to care for the ongoing physical, mental, and emotional needs of the child within a reasonable time;

. . .

(d)    excessive use of intoxicating liquor or of a narcotic or dangerous drug that affects the parent's ability to care and provide for the child;

. . .

(g)    any reasonable efforts by protective service agencies that have been unable to rehabilitate the parent.

Here, the record indicates that Mother is not emotionally stable enough to care for the children. Since December 1989, Mother has been hospitalized and treated for depression and has been hospitalized twice for pill overdoses. A psychological evaluation and treatment, as recommended in her treatment plan, could have assisted Mother, but she chose not to pursue this avenue. The record also indicates that Mother has a history of chronic alcohol and drug abuse. Although the record indicates that she has made efforts to remedy her chemical dependency through a treatment program, the record also indicates that she failed to complete the required after-care program. Furthermore, the record indicates that the Department's efforts to rehabilitate Mother failed because she was unwilling to comply with the three goals of the court-approved treatment plan over a six-month time span.

9

Furthermore, § 42-3-609(3), MCA, provides that "the court shall give primary consideration to the physical, mental, and emotional conditions and needs of the child[ren]." Here, the record indicates that in May 1989, Mother left her children with B.J. and departed to Nevada because she "decided to screw off" her life. The record indicates that in August 1989, the children were subjected to abandonment by both of her parents when a babysitter turned the children over to the Jefferson County Sheriff's Office. N.J.'s therapist testified that N.J. displayed the behavior of a child who has been abandoned. Because of Mother's and Father's actions, the physical, mental, and emotional condition of N.J. has been harmed, and his needs have been left unfulfilled. Regarding A.J., although she does not exhibit outward signs of abandonment, her abandonment by her parents threatened her physical, mental, and emotional condition and left her needs unfulfilled.

In conclusion, we hold that the District Court did not err when it found that Mother's conduct or condition rendering her unfit as a parent was unlikely to change within a reasonable time. Additionally, we hold that Mother failed to comply with the three goals under the treatment plan. We therefore affirm the District Court's order.

_____
Chief Justice

10

We concur:

_Karla M. Gray_

_Jim Rieutalor_

_William E. Hunt Sr._

_____
Justices