

DA 16-0508

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 27N

IN THE MATTER OF:

X.S., K.S., A.S., and I.S.,

      Youths in Need of Care.

| | |
|---|---|
| APPEAL FROM: | District Court of the Nineteenth Judicial District, In and For the County of Lincoln, Cause Nos. DN-15-17, DN-15-18, DN-15-19, DN-15-20 Honorable James B. Wheelis, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

            Tracy Labin Rhodes, Attorney at Law, Missoula, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant Attorney General, Helena, Montana

            Bradley Custer, Assistant Attorney General, Kalispell, Montana

            Bernard G. Cassidy, Lincoln County Attorney, Libby, Montana

Submitted on Briefs: January 25, 2017

Decided: February 14, 2017

Filed:

_____
                Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 J.S. (Father) appeals the Nineteenth Judicial District Court's orders terminating his parental rights to his four children, X.S., I.S., A.S., and K.S.[1] We affirm.

¶3 The Child and Family Services Division of the Department of Health and Human Services (the Department) received numerous reports over the course of approximately four years of Father's lack of parenting skills and motivation to parent, his alleged drug use, and his children's exposure to unsanitary living conditions. Father entered into voluntary service agreements with the Department in October 2014 and March 2015, but he failed consistently to participate in mental health counseling or random drug testing in accordance with the agreements. Father completed a psychological and a chemical dependency evaluation in which he was diagnosed with bipolar disorder and marijuana abuse in early remission.

¶4 The Department petitioned for Emergency Protective Services, Adjudication as Youth in Need of Care, and Temporary Legal Custody for each of Father's four children

---

[1] This case originally also pertained to the children's mother, A.S. She relinquished her parental rights and is not a party in this appeal. We address the facts of the case only as they pertain to Father.

2

in July 2015. The District Court granted these petitions, and the children were removed from Father's care.

¶5 Father agreed without objection to a court-approved treatment plan in October 2015. Under the terms of the treatment plan, Father committed to regularly attend mental health counseling sessions, submit to random drug testing, maintain safe and stable housing, maintain contact with the Department, and regularly visit and communicate with his children, among other things.

¶6 Father failed to comply with his treatment plan. He attended some counseling sessions but was discharged after missing several consecutive sessions. He failed a drug test and then missed a subsequent scheduled test. He did not communicate regularly with the Department or with his children. In fact, between the start of the treatment plan in October 2015 and the termination hearing in July 2016, he requested only one visit with his children. Father moved to Idaho in February 2016 to live with his mother and his biological father, a registered sex offender, contrary to his commitment to maintain a safe and stable home.

¶7 The Department petitioned for termination of Father's parental rights in April 2016. A hearing was scheduled for June and then continued to July 2016. Around the time that the Department filed its petition, Father told the Department he wanted to continue drug testing. Shortly before the July hearing, Father successfully completed "a few" drug tests and asked the Department to help him re-enroll in counseling and to coordinate a visit with his children.

¶8     The hearing proceeded as scheduled, and the court granted the Department's petition for termination. It concluded that "[t]he last minute efforts that [Father] made, while credible," were "insufficient" to show that his conduct was likely to change within a reasonable time. The court followed with written findings of fact and conclusions of law. It explained that the Department had made reasonable efforts to reunite Father with his children, but that Father had failed to comply with the treatment plan. The court found that the conduct or condition rendering him unfit to parent was not likely to change within a reasonable time based upon Father's failure to timely address the issues that caused the children to be adjudicated as youths in need of care.[2] Father appeals.

¶9     We review for abuse of discretion a district court's termination of parental rights. *In the Matter of C.J.*, 2010 MT 179, ¶ 20, 357 Mont. 219, 237 P.3d 1282. We determine whether the district court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *Matter of C.J.*, ¶ 20. Whether a district court violated a parent's constitutional right to fundamentally fair proceedings is a question of constitutional law for which this Court's review is plenary. *In the Matter of B.W.S.*, 2014 MT 198, ¶ 10, 376 Mont. 43, 330 P.3d 467.

¶10    Father first argues that the termination proceeding violated his constitutional right to due process because the District Court erroneously applied a legal presumption under § 41-3-604(1), MCA, that termination was in the best interests of the children. He also maintains that his right to fundamentally fair procedures was compromised because the

---

[2] The District Court issued four separate orders—one for each child. These orders contain nearly identical language.

court apparently lost consciousness and had difficulty hearing during the proceeding. At the termination hearing, Father's attorney objected to a question that the Department's attorney asked of one of the witnesses. After the objection, the court stated, "You know what I just passed out. What was the question again?" After a brief discussion, the court sustained Father's attorney's objection. On at least three occasions during the proceeding, the court stated that it was having trouble hearing the speakers.

¶11 We have held that "a natural parent's right to care and custody of a child is a fundamental liberty interest which courts must protect with fundamentally fair procedures at all stages of the proceedings for the termination of parental rights." *Matter of C.J.*, ¶ 26 (internal quotes and citations omitted). Fundamental fairness requires that the parent not be placed at an unfair disadvantage in the termination proceedings. *In the Matter of A.S.A.*, 258 Mont. 194, 198, 852 P.2d 127, 129 (1993). Montana law creates a legal presumption that the child's best interests will be served by termination of parental rights if the child "has been in foster care under the physical custody of the state for 15 months of the most recent 22 months." Section 41-3-604(1), MCA.

¶12 The District Court's termination proceeding did not violate Father's due process right to a fundamentally fair proceeding. First, contrary to Father's argument, the record shows that the court did not apply a legal presumption under § 41-3-604(1), MCA, that termination was in the best interests of the children on the ground that they had been in state custody for at least fifteen of the past twenty-two months. The transcript shows that the court proceeded with the hearing, not because it was convinced that such a legal presumption existed, but because Department counsel advised the court that the evidence

5

would show that Father had failed to comply with his court-approved treatment plan. The court's findings and conclusions say nothing about the statutory presumption.

¶13 Second, the court's difficulty hearing and its comment that "I just passed out" do not indicate that the court was inattentive to the proceeding so as to render it fundamentally unfair. *See Matter of C.J.*, ¶ 26. The court's sporadic statements that it was having difficulty hearing do not show that it suffered pervasive hearing problems that prevented the court from hearing substantive portions of the testimony. Likewise, the court's isolated statement does not indicate that the court actually was unconscious or that it failed to hear significant portions of the testimony. Further, the comment preceded the court's request to repeat a question to which Father's attorney objected, and the court then sustained the objection. Because the objection was sustained, Father was not prejudiced. The court's findings reflect careful attention to the evidence presented during the hearing, and Father has not demonstrated error.

¶14 Father next contends that the court erred in finding that his conduct was unlikely to change within a reasonable time. A district court may terminate a parent-child legal relationship if it finds, based on clear and convincing evidence, that: (1) the child is an adjudicated youth in need of care; (2) an appropriate treatment plan has been approved by the court but has not been complied with by the parent; and (3) the conduct or condition of the parent rendering him unfit is "unlikely to change within a reasonable time." Section 41-3-609(1)(f), MCA. Whether the parent's conduct or condition is unlikely to change within a reasonable time "must, to some extent, be based on a person's past

6

conduct." *In the Matter of C.W.E.*, 2016 MT 2, ¶ 11, 382 Mont. 65, 364 P.3d 1238 (quoting *In the Matter of M.T.*, 2002 MT 174, ¶ 34, 310 Mont. 506, 51 P.3d 1141).

¶15 Father does not contest the court's finding that he failed to complete his treatment plan, but argues that there was not sufficient evidence that he was unlikely to change once the Department re-engaged with reasonable efforts. The substantial credible evidence supports the District Court's findings. Father repeatedly failed to satisfy his commitments under the voluntary service agreements and the treatment plan. He failed to regularly attend counseling or to consistently attend and pass drug tests. By moving in with a registered sex offender, he did not maintain a safe and stable home. He did not stay in regular contact with the Department, and he neglected to consistently communicate with and visit his children.

¶16 The court allowed Father ample time—approximately nine months from the date of the treatment plan—to comply with the treatment plan. *See, e.g., In the Matter of the Custody and Parental Rights of N.J.*, 250 Mont. 198, 201-02, 819 P.2d 166, 167-68 (1991) (holding that the District Court did not err in terminating Mother's parental rights where Mother failed to comply with treatment plan for six months after its approval). Given the Department's numerous attempts to work with Father to improve his parenting abilities and Father's consistent non-compliance with his commitments, the District Court did not clearly err in finding Father's reinitiated efforts to be insufficient. The court properly gave primary consideration to the best interests of the children. *See Matter of C.W.E.*, ¶ 11. It did not abuse its discretion in determining that Father's conduct or condition was unlikely to change within a reasonable time.

7

¶17    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for noncitable memorandum opinions.  This appeal is resolved by the clear application of applicable standards of review.  The District Court's orders terminating Father's parental rights are affirmed.


/S/ BETH BAKER


We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ DIRK M. SANDEFUR
/S/ JAMES JEREMIAH SHEA