No. DA 06-0275

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 147

IN THE MATTER OF D.F.,

     Youth in Need of Care.

APPEAL FROM:    The District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DN 2004-012,
Honorable James A. Haynes, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

     Sasha K. Brownlee, Attorney at Law, Hamilton, Montana

     For Respondent:

     Hon. Mike McGrath, Montana Attorney General, Ilka Becker,
Assistant Attorney General, Helena, Montana

     Michael L. Hayes, Hayes and Hayes, Hamilton, Montana

Submitted on Briefs:  November 14, 2006

Decided:  June 19, 2007

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Appellant, the natural mother of D. F., appeals from the Order entered by the District Court of the Twenty-First Judicial District, Ravalli County, terminating her parental rights to D.F. She raises the following issues:

¶2 (1) Did the District Court err in finding that Appellant failed to complete her treatment plan?

¶3 (2) Did the District Court err in finding that the conduct or condition rendering Appellant unfit to parent D.F. is unlikely to change within a reasonable time?

¶4 We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 D.F. is currently three years old. He was born on March 10, 2004, and thereafter resided in Hamilton with his father and mother. When he was born, D.F.'s mother was eighteen years old, his father was twenty years old, and they were not married.

¶6 In late May of 2004, when D.F. was just over two months old, he was admitted to Marcus Daily Memorial Hospital in Hamilton, suffering from seizures. He was found to be in "near death" condition and was consequently transported to Community Medical Center in Missoula by way of Life Flight service. It was determined that D.F. was suffering from a dangerously high level of sodium in his system, and the incident was reported to the Child and Family Services Division ("CFS") of the Department of Public Health and Human Services. CFS began an investigation into the matter and learned that Appellant had tested positive for opiates at the time of D.F.'s birth.

¶7 Nearly one week later, after his sodium level was brought under control and he ceased suffering from seizures, D.F. was released to the care of his parents. However, two days later he was again admitted to Community Medical Center in "near death" condition, again suffering from a dangerously high level of sodium.

¶8 After extensive evaluation, the treating pediatrician, Dr. Thomas Jay Lowder, concluded that D.F.'s elevated sodium level could only have been caused by direct administration of salt or improper mixture of his formula. In that regard, Dr. Lowder noted that D.F.'s mother had demonstrated to the attending nurses that she did not understand how to properly mix D.F.'s formula. Dr. Lowder also questioned whether D.F. was receiving adequate nutrition, noting that he had lost one pound since being discharged from the hospital two days earlier. Further, after observing D.F.'s parents at the hospital and having a frank discussion with them regarding the child, Dr. Lowder concluded that they were not responsive to D.F.'s needs. Ultimately, Dr. Lowder refused to release D.F. to his parents, fearing that the child would not survive in their care.

¶9 Dr. Lowder informed CFS of his findings and D.F. was taken into protective custody. Shortly thereafter, CFS received a report stating that: (1) the parents' residence is unfit for a child to live in, as it is infested with mice and filthy in a number of other respects; (2) D.F.'s mother "shows no affection to [D.F.] and pawns him off on who ever will care for him"; and (3) during her pregnancy with D.F., the mother stated that she did not wish to have a baby. The record before us does not contain this report or disclose the author; however, D.F.'s parents have not disputed the accuracy of the report.

¶10     In June of 2004, CFS filed its Petition for Emergency Protective Services pursuant to § 41-3-427, MCA.  With this Petition, CFS requested that the District Court adjudicate D.F. as a "youth in need of care" and grant CFS temporary legal custody of him.  In the alternative, CFS requested temporary investigative authority.  The District Court appointed Bitterroot CASA as the guardian *ad litem* for D.F., and appointed counsel for each of the parents and the guardian *ad litem*.  Thereafter, the court granted CFS's request for temporary investigative authority.

¶11     In August of 2004, after consultation with their respective counsel, both parents admitted, by written stipulation, that D.F. had been "abused or neglected," as defined by statute, and that he met the statutory definition of a "youth in need of care." Additionally, the parents stipulated that CFS should be granted temporary authority to place D.F. in an appropriate care facility.

¶12     Later that month, the District Court issued its Order in response to the Petition for Emergency Protective Services.  This Order noted a number of issues beyond D.F.'s two "near death" experiences.  For example, the court observed that after CFS filed its Petition for Emergency Protective Services, Appellant's residence was inspected by Dr. Richard Eggleston of the Ravalli County Public Health Department, and he concluded that it was "unsafe and should not be inhabited due to numerous health issues, including the odor of raw sewage in the bathroom, inadequate ventilation, significant breeding areas for insects and bacteria, multiple holes in walls, uncovered electrical plates and the fire hazard posed by a wood burning stove in the kitchen."  The court found that this residence had been in substantially similar condition while D.F. lived there.

4

¶13    Additionally, the court found that "[b]oth natural parents have recently been involved with the criminal justice system in ways that pose a risk to their child due to domestic violence, irresponsible behavior involving alcohol and drugs, and the potential for future incarceration."  In making this finding, the court noted, inter alia:  "On or about April 7, 2004, the Hamilton City Police responded to a domestic disturbance involving both parents at a time when their infant was less than a month old. . . .  [The father] was charged with partner/family member assault [of the mother] arising from the disturbance."

¶14    The court also found that it was not possible for D.F. to safely return to the care of either parent at that time.  Finally, the court found:  "by a preponderance of the evidence [D.F.] is a Youth in Need of Care within the meaning of § 41-3-102, M.C.A., because he has been subjected to actual physical harm and to a substantial risk of physical or psychological harm by the acts or omissions of his parents."  Accordingly, the court granted CFS temporary legal custody of D.F.  Several days later, the court approved separate treatment plans for the mother and the father to address the circumstances that led to their loss of custody of D.F.

¶15    Although D.F.'s parents took some steps toward the completion of their respective treatment plans, both of them ultimately failed to fully adhere to the requirements of these plans.  In fact, after March of 2005, the father ceased all efforts to comply with his treatment plan.

¶16    As part of her treatment plan, Appellant went to a therapist, Dr. John Sisson, who determined that Appellant was suffering from serious psychological issues.  While we

need not expound upon these issues, we note Dr. Sisson found that Appellant was in an "intimidating and violent relationship" with D.F.'s father and that, because of her psychological condition, she was highly likely to continue being involved in abusive relationships.

¶17 In September of 2005, after the parents had been allowed over a year to complete their respective treatment plans, CFS filed its Petition requesting that the District Court terminate the mother and father's parental rights to D.F. This Petition also requested that the court grant CFS permanent legal custody of D.F., as well as the right to consent to an adoption. In support of the Petition, CFS alleged, inter alia, that both parents had not complied with their respective treatment plans; that they were not fit to parent D.F.; and that their conduct or condition was not likely to change within a reasonable time.

¶18 Shortly after CFS filed this Petition, a second boy was born to the parents. Appellant had exposed the child to methamphetamine during her pregnancy and he was born with several physical complications. Further, a drug screening showed that he had methamphetamine in his system at birth. Subsequently, he became the subject of a separate proceeding, which is not presently before us, and CFS obtained temporary legal custody of him.

¶19 When the District Court held a hearing to consider CFS's request for termination of the parents' rights with respect to D.F., the father did not attend. His counsel did appear, but had no testimony or evidence to present on the father's behalf, and counsel informed the court that he believed the father did not seek to regain custody of D.F. The

mother appeared at the hearing with counsel and contested CFS's efforts to terminate her parental rights.

¶20 In January of 2006, the District Court entered its Order terminating the mother and father's parental rights with respect to D.F. The mother now appeals.

## STANDARD OF REVIEW

¶21 Appellant raises no issues of law; she challenges only the District Court's factual findings underlying its decision to terminate her parental rights. We review the court's factual findings to determine whether they are clearly erroneous. *Matter of C.R.O.*, 2002 MT 50, ¶ 10, 309 Mont. 48, ¶ 10, 43 P.3d 913, ¶ 10. A factual finding is considered clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence underlying the finding, or if a review of the record leaves this Court with a definite and firm conviction that a mistake has been made. *Matter of C.R.O.*, ¶ 10.

¶22 An appellant bears the burden of establishing error by the district court. *Matter of M.J.W.*, 1998 MT 142, ¶ 18, 289 Mont. 232, ¶ 18, 961 P.2d 105, ¶ 18. Thus, Appellant here bears the burden of establishing that the District Court's factual findings are clearly erroneous.

## DISCUSSION

¶23 When a child has been adjudicated as a "youth in need of care," the district court may thereafter order a termination of the parent-child legal relationship if it finds, by clear and convincing evidence, that both of the following circumstances exist: (1) the parents have not complied with an appropriate court-approved treatment plan, or the

7

treatment plan has not been successful; and (2) the conduct or condition of the parents rendering them unfit to care for the child is unlikely to change within a reasonable time. Section 41-3-609(1)(f)(i), (ii), MCA. The latter determination must be based in part on the parent's past conduct—i.e., conduct prior to any efforts made in the treatment plan—because it is not otherwise possible to anticipate with certainty whether the conduct or condition of the parents will change within a reasonable time. *Matter of D.B.*, 2004 MT 371, ¶ 48, 325 Mont. 13, ¶ 48, 103 P.3d 1026, ¶ 48. Additionally, in making this latter determination the court must consider, but is not limited to, the following factors: the nature and duration of any emotional illness, mental illness, or mental deficiency of the parent; any history of violent behavior by the parent; excessive use of intoxicating liquor or a narcotic or dangerous drug by the parent; and present judicially ordered long-term confinement of the parent. Section 41-3-609(2), MCA. In considering these factors, the court must give primary consideration to the physical, mental, and emotional conditions and needs of the child. Section 41-3-609(3), MCA. Finally, in order to establish that the conduct or condition rendering the parent unfit is unlikely to change within a reasonable time, the court must specifically enter at least one of the following findings: (1) that continuation of the parent-child legal relationship will likely result in continued abuse or neglect; or (2) that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care. Section 41-3-609(2), MCA.

¶24　　A natural parent's right to the care and custody of his or her child is a fundamental liberty interest which must be protected by fundamentally fair procedures. *Matter of C.R.O.*, ¶ 10. Here, Appellant does not challenge any of the procedures followed in this

8

case.  Additionally, Appellant does not challenge the District Court's adjudication of D.F. as a "youth in need of care."  Further, Appellant does not dispute the propriety of her treatment plan approved by the court after CFS was granted temporary legal custody of D.F.  Rather, Appellant challenges the Order terminating her parental rights by arguing that the court erred in rendering its factual findings.  As noted above, we review the court's factual findings to determine whether they are clearly erroneous, *Matter of C.R.O.*, ¶ 10, and the Appellant bears the burden of demonstrating that such an error has occurred, *Matter of M.J.W.*, ¶ 18.

¶25 **(1) Did the District Court err in finding that Appellant failed to complete her treatment plan?**

¶26 Appellant's treatment plan was developed through a collaborative effort between her and CFS.  Appellant, along with her counsel, stipulated to the treatment plan in a written agreement with CFS before the District Court approved it.  The plan identified a number of problems to be addressed through treatment, including:  (1) the mother "has displayed a lack of knowledge in understanding the needs and development of [D.F.] by having him in an unclean and unsafe environment and not feeding him appropriately"; (2) she has been living in a residence that "has been declared uninhabitable by the City of Hamilton [and she is presently] living with friends and has no permanent residence of her own"; (3) she has not completed her high school education; (4) she "has no form of employment to financially support herself and [D.F.]"; and (5) she "has a history of domestic violence and anger management issues."

9

¶27 The treatment plan also specified a number of tasks that Appellant was to complete in order to address these issues. Among other things, the plan required that she: (1) complete an approved parenting class; (2) demonstrate the ability to effectively meet D.F.'s needs by appropriately caring for and nurturing him during supervised visitation; (3) submit to a psychological evaluation and parenting assessment by an approved therapist, and follow all recommendations made by that therapist; (4) obtain a General Equivalency Diploma ("GED"); (5) actively seek employment; (6) abstain from using alcohol and illegal substances; (7) submit to random urinalysis testing to detect the presence of any alcohol or other substances in her system; and (8) complete an anger management evaluation and counseling with an approved counselor, and follow all recommendations made by the counselor.

¶28 The District Court found that Appellant did perform some of these tasks, such as regularly attending supervised visitation sessions, attending a parenting class, and obtaining and maintaining a steady job. The court also found that she had made genuine progress in developing an emotional attachment to D.F. during supervised visitations.

¶29 However, the court also found that she failed to complete a number of tasks required by the treatment plan. Specifically, the court found that she failed to obtain her GED; failed to adequately engage in counseling; failed to give interpretable answers in her anger management assessment; and failed to participate in random urinalysis testing during a period when she resided with the father who was, at that same time, testing positive for drugs. In finding that Appellant had failed to submit to random urinalysis testing, the court also noted that she had in fact exposed her second son to

10

methamphetamine during her pregnancy, which began after her treatment plan was initiated. With respect to Appellant's failure to adequately engage in counseling, the court found that her "superficial" efforts in that regard "did not result in any meaningful change." Further, apart from Appellant's failure to complete all the particular tasks of her treatment plan, the District Court found that she had also failed to achieve the overall changes which the treatment plan was intended to accomplish.

¶30 Appellant's counsel devotes a significant portion of her brief to arguing that Appellant has complied with various aspects of the treatment plan not mentioned in the District Court's Order. However, these arguments are not relevant because they fail to address the District Court's specific findings regarding Appellant's non-compliance with other aspects of the treatment plan. Further, Appellant's compliance with some requirements of the treatment plan cannot make up for her lack of compliance with other requirements. As we have held, the parent must fully comply with the treatment plan; partial compliance or even substantial compliance is insufficient under our statutory scheme. *Matter of T.L.*, 2005 MT 256, ¶ 14, 329 Mont. 58, ¶ 14, 122 P.3d 453, ¶ 14.

¶31 Appellant's treatment plan required her to follow all recommendations made by an approved therapist. This therapist, Dr. John Sisson, recommended that Appellant engage in counseling with Dr. Terri Spanogle. Although Appellant did meet with Dr. Spanogle, the District Court found that she did not meaningfully engage in the counseling. Thus, the District Court found that Appellant failed to comply with her treatment plan by not following Dr. Sisson's recommendation. Appellant argues that she did comply with the treatment plan because Dr. Sisson testified at the termination hearing that he was not

11

asked to perform any work with Appellant after he made his recommendation for counseling. However, this fact is irrelevant to the issue of whether she adequately followed Dr. Sisson's recommendation, as required by the treatment plan. Moreover, Appellant does not address the court's finding that she failed to meaningfully engage in the counseling. Thus, Appellant fails to demonstrate that the court's finding is erroneous in any way.

¶32 Appellant's treatment plan also required that she inform CFS of any person staying at her residence for more than forty-eight hours, and that such a person must be approved by CFS. The District Court did not make any findings as to whether Appellant had violated these provisions in the treatment plan. Nonetheless, Appellant claims that she complied with these provisions, arguing that there is no evidence D.F.'s father was ever at her residence for more than a few hours on any given occasion. Appellant then proceeds to complain about CFS's efforts to end her association with D.F.'s father. We find Appellant's argument entirely irrelevant. The District Court cited her refusal to disassociate with D.F.'s father as evidence that she was unwilling or unable to change her behavior within a reasonable time, not as evidence of a violation of the treatment plan. And, as noted, the court did not make any findings as to whether Appellant had violated the above-noted provisions in the treatment plan. Accordingly, we need not address this argument further.

¶33 Because Appellant did not complete her high school education, the treatment plan required her to obtain a GED. The District Court found that Appellant failed to obtain a GED, despite the fact that she had over one year in which to do so after the treatment

12

plan was initiated. Appellant argues that her failure in this regard should be excused for various reasons. For example, she argues that this failure would not cause any neglect or harm to D.F. However, Appellant cites no authority for the notion that this Court may excuse a parent's non-compliance with any particular aspect of his or her treatment plan. Indeed, our precedent holds that full compliance with the treatment plan is required under our statutory scheme. *Matter of T.L.*, ¶ 14. Moreover, even if Appellant's failure to obtain a GED were excusable, that would not have any bearing on her other failures to comply with the treatment plan. Thus, Appellant's argument is unavailing.

¶34 Appellant's treatment plan also required her to submit to random urinalysis testing to detect the presence of alcohol or other substances in her system. The District Court found that she failed to adhere to this requirement. Appellant asserts that she did submit to some testing and the results of those tests showed no prohibited substances in her system. However, her compliance on some occasions cannot offset her non-compliance on other occasions. Again, full compliance with the treatment plan is required under our statutory scheme. *Matter of T.L.*, ¶ 14. Appellant also argues that "any failures to call in to see if she needed to come in occurred early on and when the Appellant was either at work or did not have a telephone." Yet, Appellant does not explain how her purported inability to reach a telephone or otherwise engage in necessary communications would render the District Court's finding erroneous. Accordingly, Appellant fails to demonstrate that the court's finding is erroneous in any way.

¶35 Appellant's treatment plan also required her to complete an anger management assessment with an approved counselor. The District Court found that Appellant did not

13

successfully complete this task because she failed to give interpretable answers during the assessment. Appellant focuses on the fact that she did actually attend the assessment, and argues that CFS was at fault for not prompting her to take further steps with regard to her anger management issues. However, Appellant's argument fails to address the court's specific finding that establishes her failure to comply with the treatment plan—i.e., the finding that she did not give interpretable answers during her assessment. Thus, her argument is not relevant to the issue at hand and it therefore fails to demonstrate any error in the court's finding.

¶36 Finally, as noted above, the District Court found not only that Appellant had failed to complete various tasks outlined in the treatment plan, but also that she "failed to successfully accomplish the overall goal of the treatment plan." This finding reflects the language of § 41-3-609(1)(f)(i), MCA, which provides that, as one prerequisite to the termination of parental rights, the court must find that "an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful." As we have recognized, this disjunctive language indicates that a treatment plan may properly be considered unsuccessful even if the parent has completed all the required tasks. *Matter of A.F.*, 2003 MT 254, ¶ 25, 317 Mont. 367, ¶ 25, 77 P.3d 266, ¶ 25. Indeed, in this case the District Court found that Appellant had merely engaged in superficial efforts and was "just going through the motions" with respect to some tasks that she did perform. Thus, regardless of whether the court erred in finding that Appellant failed to complete all the tasks outlined in her treatment plan, the court's

14

finding as to the overall success of the plan is independently sufficient to satisfy § 41-3-609(1)(f)(i), MCA.

¶37 We conclude that Appellant has failed to carry her burden to demonstrate that the District Court was clearly erroneous in finding that she failed to complete the treatment plan. To the extent Appellant's arguments are relevant to the inquiry on appeal, they do not demonstrate that the court's finding was not supported by substantial evidence or that the court misapprehended the effect of the evidence. And, after reviewing the record together with Appellant's arguments, we are not convinced that any mistake has been made. Moreover, Appellant has failed to address the court's finding that the treatment plan was ultimately unsuccessful. Accordingly, we affirm the District Court on this issue.

¶38 **(2) Did the District Court err in finding that the conduct or condition rendering Appellant unfit to parent D.F. is unlikely to change within a reasonable time?**

¶39 Having addressed Appellant's non-compliance with her treatment plan and the plan's overall lack of success, the court then found that Appellant is not capable of safely parenting D.F. and her condition or conduct is not likely to change within a reasonable time. The court also found that continuation of the parent-child legal relationship between D.F. and Appellant "will likely result in continued abuse or neglect." While the court cited a number of factors supporting the finding regarding Appellant's prospects for change, it focused on two issues.

¶40 First, the court noted D.F.'s "significant special needs," citing Dr. William Cook's unchallenged testimony that D.F. has serious deficiencies in cognitive development and

significant personality issues "which will present a challenge for the most stable and skilled parent." The court also noted Dr. Cook's testimony that D.F. "needs permanency more than he needs anything else" and a lack of permanent custody "in the near future could severely affect [his] future."

¶41 Second, the court focused on Appellant's failure to address the psychological issues that led directly to her loss of custody of D.F. In particular, the court noted that in the twelve-plus months since beginning her treatment plan, Appellant had not only "failed to successfully address the psychological issues that make her susceptible to abusive relationships," but she had in fact "failed to demonstrate any insight into the risks of continuing her association with [D.F.'s father]." Additionally, the court found, during her treatment Appellant had "continually lied and misled [CFS representatives] that she was no longer seeing [D.F.'s father]." The court also found that "due to her untreated psychological issues, [she] would continue to endanger [D.F.], including by associating with [the father] or another abusive partner." Further, the court noted Dr. Sisson had testified that Appellant "will be unable to change or to improve her parenting skills in any reasonable time in the future." This testimony, the court found, "was not credibly refuted by [Appellant] at the [termination] hearing." Finally, the court found that Appellant's "unresolved psychological issues, stemming back to her family of origin, are of such a duration and nature as to render her unlikely to be able to care for the ongoing physical, mental, and emotional needs of the child within a reasonable period of time."

¶42 Appellant argues that the District Court erred in finding that the condition rendering her unfit to parent D.F. is unlikely to change within a reasonable time. In

16

support of this argument, Appellant contends that she was making progress toward the necessary changes. Specifically, she asserts that D.F.'s guardian *ad litem* and the social worker who supervised Appellant's visitations with D.F. both testified that they had witnessed significant changes in Appellant's behavior and attitudes regarding the parenting of D.F. Appellant also asserts that Dr. Spanogle would not testify at the termination hearing because she did not want to jeopardize her ongoing work with Appellant. This fact alone, Appellant claims, demonstrates that she was making progress in counseling. Further, Appellant asserts that progress is demonstrated by the fact that CFS is no longer requiring her to obtain a GED, submit to random urinalysis testing, or pursue anger management counseling. Finally, Appellant claims that she has made the necessary change of disassociating with D.F.'s father.

¶43 Even if we accept the assertion that this evidence demonstrates legitimate progress toward making the necessary changes, we must conclude Appellant has failed to demonstrate that the District Court's finding is clearly erroneous. The issue here is not merely whether Appellant has made progress or whether she would make some progress in the future. Rather, the issue is whether she is likely to make enough progress, *within a reasonable time*, to overcome the circumstances rendering her unfit to parent D.F. Section 41-3-609(1)(f)(ii), MCA. What constitutes a "reasonable time" in this case is largely dependent on D.F.'s special needs. As we have held, the needs of the child are always paramount to the rights of the parent. *Matter of M.A.E.*, 1999 MT 341, ¶ 43, 297 Mont. 434, ¶ 43, 991 P.2d 972, ¶ 43. Here, the District Court relied on Dr. Cook's testimony that D.F.'s primary need is permanency, and that a lack of permanent custody

17

in the near future, given his special needs, could severely impact his future. Among other things, Dr. Cook testified that without special care, including speech therapy, D.F. "could very easily spend his entire school career in special education."

¶44 Moreover, assessing whether Appellant could make the necessary changes within a reasonable time must be determined in part based on her conduct and condition prior to any progress made in the treatment plan. *Matter of D.B.*, ¶ 48. In this regard, the court specifically focused on Appellant's history, finding unresolved psychological issues stemming from her family background, and finding that these issues are of such a duration and nature as to render her unlikely to make the necessary changes within a reasonable time.

¶45 Appellant merely argues that she was making progress. Despite the evidence demonstrating some progress, Appellant's argument fails to address the relevant issue— i.e., whether she would likely make the necessary changes *within a reasonable time*. Thus, Appellant has failed to carry her burden to demonstrate that the District Court was clearly erroneous in finding that the condition rendering her unfit to parent D.F. is unlikely to change within a reasonable time.

¶46 The State's brief presents no analysis regarding this second issue, but merely recites the court's finding and asserts that it is supported by the record. Despite this shortcoming, we recognize that the burden is on Appellant to demonstrate error, *Matter of M.J.W.*, ¶ 18, and her arguments simply do not establish that the court's finding is clearly erroneous.

¶47 Accordingly, we affirm the District Court on this issue.

# CONCLUSION

¶1    As noted above, Appellant does not dispute the District Court's initial decision to adjudicate D.F. as a "youth in need of care."  With respect to the court's subsequent decision to terminate her parental rights, Appellant only challenges the court's factual findings.  Because we conclude Appellant has failed to demonstrate that those factual findings are clearly erroneous, we affirm the District Court's Order terminating Appellant's parental rights with respect to D.F.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JOHN WARNER