DA 09-0074

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 274N

IN THE MATTER OF

K.W.,

    A Youth in Need of Care.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDJ 2008-071-Y
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Jim Wheelis, Chief Appellate Defender, Joslyn Hunt, Assistant Appellate
Defender, Helena, Montana

    For Appellee:

    Hon. Steve Bullock, Montana Attorney General, Sheri K. Sprigg,
Assistant Attorney General, Helena, Montana

Submitted on Briefs:  July 8, 2009

Decided:  August 17, 2009

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 The biological mother of K.W. (Mother) appeals from the termination of her parental rights in the Eighth Judicial District Court. We affirm.

¶3 In June 2005, Mother gave birth to a child named C.W. C.W. was removed from Mother's care in December 2005, due to a failure to thrive. It was alleged that C.W. was starving to death. C.W. was hospitalized and later placed with a relative. In November 2006, Mother bore K.W., who is the subject of the current appeal. That same month, Mother began receiving family-based services through Healthy Mothers, Healthy Babies. In June 2007, C.W. was returned to live with Mother and his sibling K.W. The youth in need of care case involving C.W. was subsequently dismissed.

¶4 After C.W.'s case was dismissed, C.W.'s biological father, R.S., became involved in his life. On March 7, 2008, R.S. called the Department of Public Health and Human Services (DPHHS) to report that he observed burn marks on C.W. The burn marks were later observed to be on C.W.'s bottom, penis, and the left side of his face. On March 9, 2008, a physician confirmed that the burn marks appeared to be intentional.

2

¶5 On March 10, Child Protection Specialist April Jones (Jones) visited Mother to follow up on these allegations and take both C.W. and K.W. into custody. When Jones picked up K.W., he had a deep cough and was having trouble breathing. K.W. was examined by a physician, admitted to a hospital and placed on oxygen and oral antibiotics. K.W. was hospitalized for four days before he was released.

¶6 K.W. was adjudicated as a youth in need of care on April 1, 2008. DPHHS was subsequently granted temporary legal custody of K.W. and placed him with relatives. Mother was represented by counsel during this time. She did not object to K.W.'s adjudication or his placement. DPHHS subsequently entered into a treatment plan with Mother. Following a dispositional hearing before the District Court, the treatment plan was approved on April 18, 2008. Status hearings were subsequently held regarding K.W.'s case and attempts at reunification.

¶7 On October 15, 2008, DPHHS filed a petition to terminate Mother's parental rights to K.W. The petition alleged that Mother had failed to comply with the treatment plan and that the conduct or condition rendering her unfit to parent was unlikely to change within a reasonable time. The petition recited many of the elements of the treatment plan and allegations that Mother had failed to complete them. With regard to Mother's unfitness, DPHHS argued that she had been unable to resolve the issues that led to the placement of K.W. in the first place, and which had also resulted in two separate youth in need of care actions since 2006, despite working with DPHHS over the years to address and resolve these issues.

¶8 A termination hearing was held on November 25 and December 9, 2008. On January 7, 2009, the District Court granted the State's petition. In its written order, the District Court recited the various elements of the treatment plan and how Mother had failed to complete those elements. The District Court noted that Mother had in fact successfully completed a previous treatment plan regarding C.W. Despite this success, however, DPHHS was required to remove both C.W. and K.W. from Mother's care less than one year after C.W.'s youth in need of care case had been dismissed. Based on the fact that Mother had now been involved in another intervention with DPHHS and had failed to complete the treatment plan in place since April 2008, the District Court concluded that a continued parent-child relationship between Mother and K.W. would result in continued abuse or neglect.

¶9 Furthermore, the District Court concluded that the conduct or condition rendering Mother unfit and unable to give K.W. adequate parental care was unlikely to change within a reasonable period of time given the length of time that she had been involved with DPHHS in the present and past cases. Having concluded that K.W. had been previously adjudicated a youth in need of care, that Mother's treatment plan was reasonable, had not been completed, and that the conduct or condition rendering her unfit to parent was unlikely to change within a reasonable time, the District Court concluded it was in K.W.'s best interests to terminate his parental relationship with his Mother and awarded custody of K.W. to DPHHS.

¶10 Mother now appeals the termination of her parental rights. First, she argues that DPHHS failed to make reasonable efforts to reunify her with K.W. and that the District

4

Court improperly relied on her previous involvement with DPHHS regarding C.W. as a basis to conclude that her parental rights should be terminated in the present case. Mother further asserts that DPHHS's failure to work towards reunification amounted to a violation of her rights to due process. Second, she argues that the State failed to demonstrate by clear and convincing evidence that she was unfit to parent K.W. The State urges us to affirm, and asserts that the District Court did not err in terminating Mother's parental rights.

¶11 We review a district court's decision to terminate parental rights for an abuse of discretion. *In re D.B. and D.B.*, 2007 MT 246, ¶ 16, 339 Mont. 240, 168 P.3d 691. An abuse of discretion occurs when a district court acts arbitrarily, without the employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice. *In re D.B.*, ¶ 16.

¶12 Before terminating parental rights, the party seeking termination must satisfy the statutory requirements by clear and convincing evidence, and the district court must make specific factual findings in support thereof. *In re B.S. and G.S.*, 2009 MT 113, ¶ 19, 350 Mont. 132, 206 P.3d 74. We review a district court's findings of fact to determine whether they are clearly erroneous, and its conclusions of law for correctness. *In re B.S.*, ¶ 19.

¶13 Section 41-3-609(1)(f), MCA, permits a district court to terminate parental rights if:

> the child is an adjudicated youth in need of care and both of the following exist:

(i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and

(ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

¶14 In this case, K.W. had been adjudicated as a youth in need of care by the District Court on April 1, 2008. As the District Court findings indicate, Mother did not comply with many elements of the treatment plan. Mother has failed to demonstrate that these findings are clearly erroneous, nor has she demonstrated that the treatment plan itself was unreasonable or inappropriate in any way. Furthermore, while Mother alleges that DPHHS failed to make reasonable efforts to reunify her with K.W., these arguments are not supported by the record. Thus, we conclude that § 41-3-609(1)(f)(i), MCA, was satisfied by clear and convincing evidence.

¶15 Mother further asserts the District Court erred in concluding that the conduct or condition rendering her unfit to parent was unlikely to change within a reasonable time. We disagree and conclude that the District Court did not err in this regard. Thus, § 41-3-609(1)(f)(ii), MCA, was satisfied as well. The District Court was entitled to consider all of Mother's conduct, including her previous involvement with DPHHS regarding C.W. While Mother did successfully complete a treatment plan in that case and was reunited with C.W., C.W. was subsequently removed from her care within a year of unification due to the discovery of burn marks on his body for which no adequate explanation was provided. As we stated in *In re A.J.E. III*, 2006 MT 41, 331 Mont. 198, 130 P.3d 612, "evidence of rehabilitation does not render a district court powerless to find future danger to the child, it is simply evidence to be considered by the district

court." *A.J.E.*, ¶ 27 (quotation omitted). Indeed, it was the suspected abuse or neglect of C.W. which led DPHHS officials to the discovery of K.W.'s condition, leading to K.W's subsequent hospitalization, adjudication, and placement with DPHHS. When faced with Mother's present inability to complete the required elements of the court-approved treatment plan, the District Court was permitted to consider her previous involvement with DPHHS in assessing if she would be fit to parent K.W. within a reasonable time. *See In re D.F.*, 2007 MT 147, ¶ 23, 337 Mont. 461, 161 P.3d 825 (stating that a determination under § 41-3-609(1)(f)(ii), MCA, "must be based in part on the parent's past conduct—i.e., conduct prior to any efforts made in the treatment plan—because it is not otherwise possible to anticipate with certainty whether the conduct or condition of the parents will change within a reasonable time."). Accordingly, we conclude that the required statutory criteria for parental termination were satisfied in this case by clear and convincing evidence.

¶16 We have determined to decide this case pursuant to Section 1, Paragraph 3(d)(v) of our 1996 Internal Operating Rules, as amended in 2003, which provides for memorandum opinions. It is manifest on the record before us that the District Court did not abuse its discretion in terminating Mother's parental rights. Affirmed.

/S/ PATRICIA O. COTTER

We concur:

/S/ BRIAN MORRIS
/S/ JOHN WARNER
/S/ JIM RICE

7

/S/ JAMES C. NELSON