FILED

02/22/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0221

DA 21-0221

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2022 MT 37

IN THE MATTER OF D.H.,

    A Youth in Need of Care.

APPEAL FROM:    District Court of the Twelfth Judicial District,
In and For the County of Hill, Cause No. DN 21-3
Honorable Kaydee Snipes Ruiz, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Jennifer Dwyer, Avignone, Banick & Williams, Bozeman, Montana

    For Appellee:

    Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

    Lacey Lincoln, Hill County Attorney, Havre, Montana

Submitted on Briefs:  January 12, 2022

Decided:  February 22, 2022

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1    A.H. (Father) appeals from the April 1, 2021 Order Following Status Hearing and the April 12, 2021 Order for Dismissal issued by the Twelfth Judicial District Court, Hill County, which dismissed pending abuse and neglect proceedings after D.H. (Child) was returned to the care of C.H. (Mother) in South Carolina.

¶2    We restate the issue on appeal as follows:

*Whether the District Court erred by dismissing the abuse and neglect proceedings and placing the child with the non-offending parent.*

¶3    We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4    On February 9, 2021, Child was removed from Father's care by the Montana Department of Public Health and Human Services, Child and Family Services Division (Department) after he was arrested and incarcerated for assaulting his live-in girlfriend. Mother was living in South Carolina and Child was placed into emergency kinship care in Havre. On February 11, 2021, the Department filed a Petition for Emergency Protective Services (EPS), for Adjudication of Child as Youth in Need of Care (YINC), and for Temporary Legal Custody (TLC) in the District Court. Attached to the Petition was an affidavit from Child Protection Specialist (CPS) Dana Kjersem, who related that Mother reported she had an order from a South Carolina court providing Mother had primary custody of Child and that Mother alleged Father had taken Child to live in Montana without her consent. A copy of this Order in cause number 18-DR-02-1488, dated August 12, 2019, from the Second Judicial Circuit Family Court in Aiken County, South Carolina, was

2

attached to CPS Kjersem's affidavit, and provided, in relevant part, that Mother had legal custody of Child, Father was allowed supervised visits, the South Carolina Department of Social Services was no longer required to provide services to the family, and the case was closed. In addition, a second order, from the same court and relating to two cause numbers, 18-DR-02-1488 and 18-DR-02-1023, dated June 4, 2020, provided legal custody was granted to Father and that Mother may have supervised visits. This second order, entitled Amended Minutes Order, on its face recounts a prior December 11, 2018 hearing and a prior setting of a hearing for March 28, 2019. It was issued, according to its plain language, as the original order did not reflect the consolidation of cause number 18-DR-02-1023 with 18-DR-02-1488. The Amended Minutes Order merely reflected the consolidation and evidence existing at the time the original order was issued.

¶5      On February 12, 2021, the District Court issued an Order Granting Emergency Protective Services, Order to Show Cause, Notice of Show Cause Hearing, and Order Appointing Counsel and CASA.[1] The court's order set a show cause hearing for February 24, 2021. At the time of the February 24, 2021 show cause hearing, Mother had not yet been served with a copy of the Department's Petition, though she appeared by video from South Carolina. Father appeared by video from the Hill County Detention Center. At the show cause hearing, both Father and Mother stipulated to probable cause for the Department to be involved in the emergency portion of the case. Mother's counsel further

---

[1] A CASA is a Court-Appointed Special Advocate.

raised a jurisdictional issue regarding the custody determinations made by the South Carolina court. Based on the stipulations of the parties, the District Court determined it had emergency jurisdiction over the matter and that probable cause existed for the Department's continued involvement, but did not adjudicate Child as a YINC. The Department then informed the court it had investigated the South Carolina orders and planned to return Child to Mother's care in South Carolina "within the next two to three weeks," based on "the Department's policy and procedure and under the UCCJEA."[2] The Department further informed the court it intended to cease intervention once Child was returned to Mother in South Carolina and any further litigation over Child's custody could be done in South Carolina courts. The District Court informed the parties it would not allow Child to be moved until the parties' attorneys had an opportunity to file an objection and set a deadline of March 3, 2021, for the parties to object.

¶6      On March 3, 2021, the District Court issued its written Order Following Show Cause Hearing. Unfortunately, this Order erroneously designated Child as a YINC. Beyond that erroneous determination, the substantive portions of the court's Order continued EPS and set a status hearing for March 24, 2021. On March 3, 2021, Father, Mother, and the Department all filed motions and briefs regarding the Department's stated plan to place Child with Mother in South Carolina. Father filed a Notice of Objection to Any Change in Placement, asserting both that he was challenging the allegations in the Department's

---

[2] The UCCJEA is the Uniform Child Custody Jurisdiction and Enforcement Act and is found in Title 40, chapter 7, MCA.

Petition and that the June 4, 2020 Amended Minutes Order from South Carolina showed Mother had "not completed all of the required conditions to allow the child to be returned to her." The Department filed the Department's Brief in Support of Placement of Child with Non-Custodial Parent. The Department's brief asserted CPS Kjersem had investigated Mother and determined there were no safety threats which would preclude placement of Child with Mother as a non-custodial, non-offending parent and that, under both Department policy and Montana case law, Child must be placed with Mother in such a situation. Finally, Mother filed a Motion to Dismiss or Place & Confer. Mother requested the District Court dismiss the abuse and neglect proceedings or, in the alternative, place Child with her and confer with the South Carolina family court under the provisions of the UCCJEA.

¶7 On March 24, 2021, due to an emergency, the District Court re-set the status hearing for March 25, 2021. At that hearing, Father's appointed counsel was unavailable due to a death in his family, and another attorney from the public defender's office appeared on his behalf. Father was apparently not given notice of the updated status hearing time by the public defender's office and did not personally appear at the hearing. At the status hearing, the Department reiterated its plan to transport Child to Mother's care in South Carolina. Father's fill-in counsel asked for a hearing so Father's appointed counsel could present argument, not evidence, on the Department's plan. The District Court determined Father's objection was a legal, rather than factual, issue and therefore another hearing was not

5

necessary.[3] The District Court did allow the parties time to submit draft orders for the court's consideration prior to making a final decision. Nothing in the record reflects the parties did in fact submit draft orders.

¶8 On April 1, 2021, the District Court issued its Order Following Status Hearing. In this Order, the District Court determined the August 12, 2019 Order from the Family Court in South Carolina, which granted custody of Child to Mother, had not been rebutted, mother's parental rights remained unimpaired, there was no evidence of any pending investigations or procedures regarding Mother, and Mother's residence in South Carolina was Child's "habitual place of abode" prior to coming to Montana. The court determined the emergency necessitating the Department's involvement had been resolved, Child could be reunified with Mother in South Carolina, there was no further need for the Department's continued intervention or prolonged protective custody, and placement with the non-offending parent was in the best interests of Child. The court ordered EPS continued as necessary to transport Child to Mother's custody in South Carolina, ordered the Department to transport Child to Mother's custody in South Carolina and notify the court once the placement was made, and ordered the matter would be dismissed upon confirmation of Child's return to South Carolina.

---

[3] Father's fill-in counsel did not disagree with the court's determination that the issues were legal rather than factual and indicated an acceptable time frame in which Father's counsel would be able to submit a draft order containing his legal arguments.

6

¶9 On April 8, 2021, the Department provided confirmation Child had been returned to South Carolina and filed a Motion for Dismissal. On April 12, 2021, the District Court issued an Order for Dismissal. Father appeals.

**STANDARD OF REVIEW**

¶10 A district court's order granting placement of a child with one parent and dismissing the case in an abuse and neglect proceeding where the other parent's parental rights have not been terminated is a reviewable order. *In re S.S.*, 2012 MT 78, ¶ 10, 364 Mont. 437, 276 P.3d 883.

¶11 We review a district court's findings of fact for clear error and its conclusions of law for correctness. *In re B.H.*, 2020 MT 4, ¶ 26, 398 Mont. 275, 456 P.3d 233 (citing *In re M.V.R.*, 2016 MT 309, ¶ 23, 385 Mont. 448, 384 P.3d 1058). A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if our review of the record convinces this Court a mistake was made. *In re J.S.L.*, 2021 MT 47, ¶ 20, 403 Mont. 326, 481 P.3d 833 (citing *In re E.Y.R.*, 2019 MT 189, ¶ 21, 396 Mont. 515, 446 P.3d 1117). The appellant bears the burden of establishing error by the district court. *In re J.S.L.*, ¶ 20 (citing *In re D.F.*, 2007 MT 147, ¶ 22, 337 Mont. 461, 161 P.3d 825).

**DISCUSSION**

¶12 *Whether the District Court erred by dismissing the abuse and neglect proceedings and placing the child with the non-offending parent.*

¶13 Father asserts the District Court erred by dismissing the abuse and neglect proceedings and placing Child in Mother's care in South Carolina. In particular, Father

argues the District Court erred by dismissing the proceeding after placing Child with Mother pursuant to § 41-3-438(3)(d), MCA, because Child was not properly adjudicated as a YINC. Father further asserts the District Court abused its discretion when it failed to give him notice and the opportunity to be heard before dismissal, by making conclusions regarding the conflicting custody orders without contacting the South Carolina court under the provisions of the UCCJEA, and by dismissing the proceedings without further investigation into Mother. The Department asserts the District Court properly dismissed the abuse and neglect proceedings after Child was returned to Mother's care in South Carolina and, to the extent the District Court erred procedurally in this case, those errors were harmless. We agree with the Department.

¶14 We begin with Father's argument regarding dismissal of the case after placement of Child with Mother pursuant to § 41-3-438(3)(d), MCA. This statute allows the District Court, after determining a child is a YINC, to "order the placement of the child with the noncustodial parent, superseding any existing custodial order, and dismiss the proceeding with no further obligation on the part of the department to provide services to the parent with whom the child is placed or to work toward reunification of the child with the parent or guardian from whom the child was removed in the initial proceeding[.]" Section 41-3-438(3)(d), MCA. As correctly pointed out by the Department, Father is incorrect in asserting the District Court dismissed the proceedings under this statute.

¶15 In its March 3, 2021 written Order Following Show Cause Hearing, the District Court, as Finding of Fact No. 8, found Child to be a YINC. All parties agree the District

Court's written finding of fact that Child was a YINC was erroneous and such finding was not actually made at the hearing. Review of the transcript of the show cause hearing shows the parties stipulated to probable cause existing for the Department's intervention and the District Court merely continuing that intervention pending the status hearing. Because Child was not properly adjudicated as a YINC, a "place-and-dismiss" order under § 41-3-438(3)(d), MCA, was not an available option to the District Court.

¶16 As Child was not properly adjudicated as a YINC, the District Court could not place Child with Mother and dismiss the case under § 41-3-438(3)(d), MCA. This, however, does not mean the District Court lacked statutory authority to order the placement of Child with Mother and dismiss the case. "'[A] natural parent's right to care and custody of a child is a fundamental liberty interest[.]'" *In re J.S.L.*, ¶ 24 (quoting *In re E.Y.R.*, ¶ 27). "Parents have a fundamental constitutional right to make decisions concerning the care, custody, and control of their children and it is well-established that a natural parent's right in this regard is a fundamental liberty interest." *In re J.S.L.*, ¶ 24 (citations omitted). The "constitutional rights to parent one's own children find protection in our statutes." *In re B.H.*, ¶ 38 (citing § 40-6-221, MCA). Section 40-6-221, MCA, provides:

> The father and mother of an unmarried minor child are equally entitled to the parenting, services, and earnings of the child. If either parent is dead or unable or refuses to exercise parenting or has abandoned the family, the other parent is entitled to the parenting, services, and earnings of the child, unless care of the child is determined otherwise pursuant to 40-4-221.[4]

---

[4] Section 40-4-221, MCA, provides for determination of a child's care upon death of a parent and is not applicable to this case.

9

Consistent with the fundamental liberty interest of a parent's right to care and custody of his/her child, "upon removal of a child from a custodial parent, the Department must first consider placement of the child with the non-custodial parent." *In re J.S.L.*, ¶ 24 (citing *In re E.Y.R.*, ¶ 29). This Court has long recognized "the constitutional rights of a natural parent to parent his/her child and the child's right to be placed with his/her legal/birth parents unless that parental authority has been abused." *In re B.H.*, ¶ 39.

¶17 The consideration of the placement of a child removed by the Department with his/her noncustodial parent must be guided by the safety of the child, as we have previously noted:

> [T]he Department should determine if there are any observable or substantiable imminent safety risks to the child if the child is placed in the care of the non-custodial parent. This determination does not at the outset require full investigation of or implementation of an ICPC or a treatment plan for the non-custodial parent, but rather occurs along a continuum. Typically, this would involve conducting a CPS history and potentially a criminal background check as well as gathering information from the non-custodial parent as to his/her work and earnings, his/her residence and who, if anyone s/he resides with, who is part of his/her support system, and potential collateral contacts who can verify the information provided. If any of the information from the CPS history, the criminal background check, or other information provided by the non-custodial parent raises objective, demonstrable circumstances indicative of an imminent safety threat to the child, the CPS case worker should follow up with further investigation to confirm the information provided by the non-custodial parent. If objective, demonstrable circumstances indicate a potential imminent safety risk to the child after completing this preliminary investigation, the CPS worker may expand the investigation. If objective, demonstrable circumstances indicate a potential imminent safety risk to the child after completing this more in-depth investigation, the CPS worker may request a court order permitting the Department to further evaluate the noncustodial parent consistent with § 41-3-438(3)(b) and (c), MCA.

*In re E.Y.R.*, ¶ 29. In addition, we have previously "delineated seven circumstances, which the State agreed expound on § 41-3-101(3), MCA, under which the Department may determine good cause to the contrary exists that the child's safety could not be assured if the child were immediately placed with the non-custodial parent." *In re J.S.L.*, ¶ 24 (citing *In re B.H.*, ¶ 43). Those circumstances include: CPS history which poses a risk to the child; parental rights terminated in a dissolution decree; parental rights involuntarily terminated to another child; conviction for various felony offenses; refusal of placement by the non-custodial parent; documented mental illness impairing the ability to parent; and if the putative parent denies paternity. *See In re J.S.L.*, ¶ 24 n.3. "If there are no objective, demonstrable circumstances of imminent safety risk to the child upon the Department's preliminary investigation, the Department must place the child with the non-custodial parent or document good cause to the contrary indicating how the non-custodial parent could not assure the safety of the child." *In re B.H.*, ¶ 46.

¶18     In this case, Child was removed from Father's care by the Department after Father was arrested for domestic violence against his girlfriend. Upon Child's removal, CPS Kjersem began her investigation of Mother as the non-custodial parent. Mother spoke to CPS Kjersem and informed her she had custody of Child, Child was taken to Montana without her consent, and provided CPS Kjersem with a copy of the August 12, 2019 order in the South Carolina case which showed Mother had custody of Child. CPS Kjersem's investigation also uncovered the June 4, 2020 order in the South Carolina case which showed Father had custody of Child because Mother had not completed her treatment plan.

11

With the backdrop of these conflicting orders, which indicated Mother had a CPS history in South Carolina, CPS Kjersem continued her investigation of Mother as a potential placement option. This further investigation when objective concerns regarding the safety of the non-custodial parent are raised during the initial investigation is required. *In re E.Y.R.*, ¶ 29.

¶19 By the time of the February 24, 2021 show cause hearing, the Department's concerns regarding Mother's ability to safely parent Child were assuaged after CPS Kjersem's further investigation and the Department notified the parties at the hearing it intended to place Child with Mother. Both Mother and Father stipulated there was probable cause for the Department's involvement and the District Court found it had emergency jurisdiction over the matter. "A finding of abuse, neglect, or dependency is the jurisdictional prerequisite for any court-ordered transfer of custody from a natural parent to the Department." *In re B.H.*, ¶ 40. Here, the District Court made this jurisdictional threshold finding when it issued the show cause order on February 12, 2021, and both parents then stipulated to probable cause for the Department's involvement. The District Court later also determined it had emergency jurisdiction under the UCCJEA, in addition to the jurisdiction conferred by the Department's abuse and neglect petition.

¶20 As the District Court properly had jurisdiction over the matter pursuant to the DN petition, and the parents disputed the appropriate placement for Child, the District Court had the statutory authority to settle the placement dispute:

> Except as provided in 41-3-301(1) and in the absence of a dispute between
> the parties to the action regarding the appropriate placement, the department

12

shall determine the appropriate placement for a child alleged to be or adjudicated as a youth in need of care. The court shall settle any dispute between the parties to an action regarding the appropriate placement. The child may not be placed in a youth assessment center, youth detention facility, detention center, or other facility intended or used for the confinement of adults or youth accused or convicted of criminal offenses.

Section 41-3-440, MCA. *See also In re B.H.*, ¶ 50. The Department determined Mother was the appropriate placement for Child after its investigation, obtaining information from the South Carolina Department of Social Services regarding Mother's CPS history in that state which showed Mother had successfully completed services to address safety concerns and was granted custody of Child by the South Carolina court. Father was able to dispute the Department's chosen placement but was ultimately unsuccessful.[5] After being granted additional time to draft a proposed order setting forth why Mother was not the appropriate placement following the status hearing, the record does not reflect Father availed himself

---

[5] Before both the District Court and on appeal here, Father appears to contend he has custody of Child based on the June 4, 2020 order of the South Carolina court which stated Mother had "not begun any aspects of her treatment plan." While it does not form a basis of our decision today, we briefly note the language of that order recounts a December 11, 2018 hearing in the South Carolina case, before Mother started her treatment plan, and sets a follow-up hearing for March 28, 2019. On the front page of the Amended Minutes Order, it states "**WHEREAS, THE ORDER ISSUED FROM THIS HEARING DID NOT CONSOLIDATE THIS CASE WITH 18-DR-02-1023. THIS AMENDED ORDER FOLLOWS.**" (Emphasis in original.) The August 12, 2019 order of the South Carolina court which granted custody to Mother, on the other hand, recounts a June 27, 2019 hearing and noted Mother had "been working her treatment plan" and had "remedied the conditions which caused removal," before determining Mother should be granted custody. It seems plainly obvious the June 4, 2020 amended order is in essence a *nunc pro tunc* order from the South Carolina court which was simply issued to correct a technical defect in an earlier order, where the court mistakenly forgot to consolidate the two pending cases, and does not supersede the June 27, 2019 order which granted Mother custody and dismissed the case after she worked her treatment plan. The Department's investigation of Mother apparently reached the same conclusion. Of course, Father is free to make the argument the June 4, 2020 order controls in a parenting plan action in the South Carolina courts if he so chooses, as his parental rights remain fully intact.

of that opportunity. It is clear then, the Department, in accordance with both case law and its own policies, did the requisite investigation of Mother as the non-custodial parent, and, finding no imminent safety concerns, endeavored to return Child to her care. Once Father objected to this proposed placement, the District Court properly used its authority under § 41-3-440, MCA, to "settle [the] dispute between the parties" by placing Child with Mother.

¶21 Father contends even if the District Court had authority to order Child placed with Mother during the abuse and neglect proceedings, it erred by dismissing the case. We disagree. In this case, it would have been preferable for the Department, in its Motion for Dismissal, to include information beyond simply noting Child had been returned to South Carolina, such as indicating it believed Mother could adequately protect Child through a parenting action case, such that Child was no longer asserted to be a YINC and the Department did not seek adjudication of Child as a YINC. Similarly, it would have also been preferable for the District Court's Order for Dismissal to note the Department no longer sought adjudication of Child as a YINC because Child's placement with Mother alleviated the concerns of the Department which originally prompted the filing of this case. Ultimately though, this lack of articulation was harmless. "In matters involving abused and neglected children, [] 'we have consistently held that a district court may protect the children's best interest despite procedural errors.'" *In re B.W.S.*, 2014 MT 198, ¶ 14, 376 Mont. 43, 330 P.3d 467 (quoting *In re F.H.*, 266 Mont. 36, 39, 878 P.2d 890, 892 (1994)). It was abundantly clear from the time of the February 24, 2021 show cause hearing, at

14

which the Department informed the parties it intended to place Child with Mother and then cease intervention, that any litigation over Child's custody could take place in the appropriate forum—South Carolina. Father was given ample opportunity to dispute this course of action but did not prevail. He is not without a remedy, however, as his parental rights remain fully intact and he may file a parenting plan action in the South Carolina courts if he so chooses.

¶22 While the District Court reached the right result in this case by placing Child with her non-offending parent when no imminent safety concerns with that parent were present and ultimately dismissing the case as the circumstances requiring the Department's intervention—domestic violence in Father's home and Father's incarceration—were abated by Child moving to live with Mother in South Carolina, the procedural path the District Court took to reach this result was not without issues. Most prominently, the District Court determined it had temporary emergency jurisdiction under the UCCJEA in both its Order Following Show Cause Hearing and Order Following Status Hearing, but then failed to follow the UCCJEA procedures. The District Court, at the same time it determined it had emergency jurisdiction under the UCCJEA, was proceeding down a parallel path under EPS, and, as explained above, ultimately reached the right result. The District Court, had it chosen to exercise jurisdiction under the UCCJEA, could have interpreted the Department's Petition to be solely for emergency jurisdiction and then immediately contacted the South Carolina court "to resolve the emergency, to protect the safety of the parties and the child, and to determine a period for the duration of the

temporary order." Section 40-7-204(4), MCA. Here, the record is silent on whether the District Court contacted the South Carolina court and we therefore presume the District Court did not contact the South Carolina court before unilaterally deciding the emergency order was in effect until Child returned to Mother's care in South Carolina. The District Court included a dismissal provision in its Order Following Status Hearing which specifically stated the matter was to be dismissed after confirming Child had returned to South Carolina. By dismissing the case, the District Court relinquished its jurisdiction and determined the emergency situation under which it exercised emergency jurisdiction was over. Assuming the District Court erred under the UCCJEA by not contacting the South Carolina court, its error was ultimately harmless as it was unnecessary for the District Court to reference the UCCJEA at all in this case. While its mixed references to its Title 41 authority and UCCJEA authority only served to provide more confusion than clarity, they do not provide reversible error here.[6] District courts should be mindful to move down one track—either Title 41 authority or UCCJEA authority—in a situation such as this, rather than taking a mixed approach comingling emergency jurisdictional concepts of Title 41 with emergency jurisdictional concepts of the UCCJEA. The District Court properly exercised emergency jurisdiction which ended when Child was returned to Mother's care pursuant to its EPS authority. In addition, Father has not suffered prejudice by either the

---

[6] Unfortunately, the parties did little to assist the District Court with the emergency jurisdiction issue as neither provided clear briefing as to the means by which the court could exercise emergency jurisdiction, specific requirements of any means, or the interplay, if any, between the means.

16

dismissal or by the procedural irregularities of the District Court as Father's parental rights remain intact and he has full ability to pursue an amendment to custody or seek whatever parenting plan he deems appropriate in a civil action in the South Carolina courts.

**CONCLUSION**

¶23　The District Court did not err by dismissing the abuse and neglect proceedings after Child was returned to Mother's care in South Carolina.　While the District Court may have more thoroughly articulated its reasoning for dismissal, it reached the right result and failure to do so did not result in reversible error.

¶24　Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR
/S/ BETH BAKER
/S/ JIM RICE