# IN THE MATTER OF:
## L.N.,
## A Youth in Need of Care.

No. DA 14-0049.
Submitted on Briefs June 18, 2014.
Decided July 15, 2014.
2014 MT 187.
375 Mont. 480.
329 P.3d 598.

For Appellant Mother: **Kathryn McEnery**, McEnery Law Office, PLLC, Kalispell.

For Appellant Father: **Lucy Hansen**, Attorney at Law, Missoula.

For Appellee: **Timothy C. Fox**, Montana Attorney General, **Katie F. Schulz**, Assistant Attorney General, Helena; **John Parker**, Cascade County Attorney, Great Falls.

CHIEF JUSTICE McGRATH delivered the Opinion of the Court.

¶1 Birth mother A.N. (Mother) and birth father J.N. (Father) appeal from an order of the Eighth Judicial District Court, Cascade County, terminating their parental rights to their daughter, L.N. We affirm.

¶2 Mother and Father present the following issues for review:

¶3 *Issue One: Whether the District Court afforded fundamentally fair procedures when it terminated the parental rights of Mother and Father.*

¶4 *Issue Two: Whether the District Court abused its discretion when it terminated the parental rights of Mother and Father.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶5 L.N. is the fourth child born to Mother and Father. Their parental rights to their three older children, J.N., M.N, and R.N. were previously terminated in a separate proceeding. The circumstances of that termination are discussed in our Opinion affirming the termination order, *In re M.N.*, 2011 MT 245, 362 Mont. 186, 261 P.3d 1047, and summarized here. In December 2008, the Department of Public Health and Human Services (Department) obtained temporary legal custody of J.N. after a substantiated report of physical neglect. Treatment plans were ordered, and Mother and Father received 206 hours of intensive, one-on-one, in-home services. During this time, Mother gave birth to M.N. In January 2010, Mother and Father minimally completed their treatment plans. The case was dismissed after a family group meeting at which it was agreed they would continue to receive services. In March 2010, Mother and Father discontinued services, saying they had decided to "take a break from going to therapy." In April 2010, J.N. was hospitalized with a depressed skull fracture. Mother and Father failed to offer a reasonable explanation for the injury. When the family arrived at the hospital, the children were unclean and had not been fed. A child protection specialist visited the home and found it to be extremely dirty and unsafe. The Department obtained temporary legal custody of J.N. and M.N. and sought termination of parental rights, arguing reasonable efforts at reunification were not required because Mother and Father had subjected the children to aggravated circumstances. While the petition for termination was pending, R.N. was born. In March 2011, the District Court terminated the parental rights of

Mother and Father to J.N., M.N., and R.N., finding clear and convincing evidence that they had subjected J.N. and M.N. to aggravated circumstances, specifically chronic and severe neglect.

¶6 L.N. was born two years later, in March 2013. Upon receiving a report of the birth, two child protection specialists visited the hospital. Father became extremely hostile and combative, saying he and Mother should have left the state so the Department could not take their child. Due to his aggressive behavior toward the nurses and child protection specialists, Father was ultimately asked to leave the hospital. L.N. was removed from her parents' care on March 18, 2013. Two child protection specialists met with Mother and Father on March 20, 2013. On March 25, 2013, the State petitioned for a determination that reasonable efforts to provide reunification services are not required, termination of parental rights, and permanent legal custody. The petition requested termination of parental rights on the grounds that Mother and Father had previously subjected J.N. and M.N. to the aggravated circumstances of chronic and severe neglect. Alternatively, the petition requested termination on the grounds that the rights of Mother and Father to L.N.'s siblings had been terminated under circumstances relevant to their ability to care for L.N. The State also asked the District Court to set a hearing on the petition. A hearing was set for April 18, 2013. Mother and Father were both served with notice of the petition and hearing.

¶7 On April 15, 2013, Father's appointed counsel filed a motion for substitution of district judge, a motion to continue the hearing on the grounds he had not yet had opportunity to contact Father, a notice that the hearing would be contested, and a response to the State's petition for termination of parental rights. The hearing was vacated and reset for May 29, 2013, due to the substitution of judge. On May 23, 2013, Father moved to vacate that hearing to allow additional time to conduct discovery. Father also moved to compel the State to respond to discovery requests. The hearing was vacated to allow resolution of the discovery issues.

¶8 No further action was taken until July 30, 2013, when the State moved to set a show cause hearing. The State said it was actively complying with Father's discovery requests, a process it claimed was time-consuming due to the volume of materials in the case file and the need to protect the confidentiality of the foster and adoptive families. The State also filed an amended petition for emergency protective services, determination that reasonable efforts are not required, termination of parental rights, and permanent legal custody.

¶9 On August 1, 2013, Father moved to dismiss the petition for lack of authority for emergency protective services and failure to hold a timely show cause hearing. The District Court denied the motion to dismiss, reasoning that as a practical matter, dismissing the petition would only result in the filing of a new petition, which would cause further delay in the scheduling of a show cause hearing. The District Court granted emergency protective services and set a show cause hearing, ordering that the petition for a determination that reasonable efforts are not required, termination of parental rights, and permanent legal custody would be heard at the show cause hearing.

¶10 The hearing was held October 8, 2013. The District Court took judicial notice of the prior termination order and the Opinion of this Court affirming that order. Testimony at the hearing showed Mother and Father still did not understand why their parental rights had been terminated with respect to J.N., M.N., and R.N. With regard to L.N., Father deferred parenting tasks to Mother, who showed an inability to recognize and respond appropriately to the infant's needs. Father continued to display anger issues and was hostile to Department staff. This hostility interfered with the Department's ability to observe conditions in the home; nevertheless, limited observations indicated the home was cluttered and had a very strong odor. Mother and Father failed to obtain a social security number and birth certificate for L.N., meaning she could not receive medical benefits. They were not receiving any community services, despite recommendations to seek support for Mother's depression and learning disabilities.

¶11 The District Court found the State had proven by clear and convincing evidence that Mother and Father had subjected J.N. and M.N. to aggravated circumstances, specifically chronic and severe neglect. Alternatively, the District Court also found that the parental rights of Mother and Father to L.N.'s siblings had been terminated under circumstances relevant to their ability to care for L.N. The District Court concluded reasonable efforts at reunification were not required and terminated the parental rights of Mother and Father to L.N.

## STANDARD OF REVIEW

¶12 We review a district court's decision to terminate parental rights for abuse of discretion. *In re D.B.*, 2007 MT 246, ¶ 16, 339 Mont. 240, 168 P.3d 691. Findings of fact are reviewed for clear error and conclusions of law are reviewed for correctness. *In re K.J.B.*, 2007 MT 216, ¶ 23, 339 Mont. 28, 168 P.3d 629. A parent's right to the care and

custody of a child is a fundamental liberty interest, which must be protected by fundamentally fair procedures. *In re D.B.*, ¶ 17.

## DISCUSSION

¶13 *Issue One: Whether the District Court afforded fundamentally fair procedures when it terminated the parental rights of Mother and Father.*

¶14 Mother and Father claim they were denied fundamentally fair process when the State failed to request emergency protective services in its initial petition. When a child protection specialist has reason to believe a child is in "immediate or apparent danger of harm," he or she may immediately remove the child. Section 41-3-301(1), MCA. After the child is safe, the Department "may ... take appropriate legal action." Section 41-3-301(1), MCA. The Department must notify the parents of the removal at the time of the removal or as soon as possible thereafter. Section 41-3-301(1), MCA. Notice must include the reason for the removal and information about the show cause hearing. Section 41-3-301(1), MCA. Additionally, the child protection specialist must submit an affidavit regarding the circumstances of the removal to the county attorney within two working days, and provide a copy to the parents if possible. Section 41-3-301(6), MCA. An abuse and neglect petition must be filed within five working days of the removal. Section 41-3-301(6), MCA. If a petition for emergency protective services is to be filed, the child protection specialist must interview the parents, if they are reasonably available, before filing the petition. Section 41-3-301(8), MCA. The Department is to make necessary arrangements for the child's care and well-being "prior to the court hearing." Section 41-3-301(9), MCA.

¶15 An abuse and neglect petition may request relief including emergency protective services, temporary investigative authority, temporary legal custody, termination of parental rights, appointment of a guardian, or a determination that reunification services are not required. Section 41-3-422(1)(a), MCA. A petition for termination of parental rights may be the initial petition filed if the petition also requests a determination that reunification services are not required. Section 41-3-422(1)(d), MCA. A show cause hearing must be conducted within 20 days of the filing of an initial petition, unless the parties agree otherwise or an extension is granted by the court. Section 41-3-432(1)(a), MCA. Following the show cause hearing, the court may enter an order for the relief requested. Section 41-3-432(7), MCA.

¶16 The Department removed L.N. from the hospital on March 18,

2013. Father exhibited aggressive behavior toward nurses and child protection specialists and talked about leaving the state with L.N. to avoid the Department's authority. Child protection specialists were justified in believing L.N. to be at risk of immediate harm. Section 41-3-301(1), MCA. Child protection specialists met with Mother and Father again two days later to discuss the reasons for the removal. Section 41-3-301(1), MCA. An affidavit stating the reasons for the removal was submitted to the county attorney on March 22, 2013. Section 41-3-301(6), MCA. Although this was not within two working days, Mother and Father have not objected to this delay. The county attorney filed the initial petition on March 25, 2013, within five working days as required by statute. Section 41-3-301(6), MCA.

¶17 The initial petition requested both a determination that reasonable efforts are not required and termination of parental rights. This relief may be requested in an initial petition. Section 41-3-422(1)(d), MCA. The statute governing abuse and neglect petitions does not require an initial petition to contain a request for emergency protective services. Section 41-3-422(1)(d), MCA. Nor does the emergency protective services statute require the Department to file a petition specifically requesting that relief. Section 41-3-301, MCA. Instead, it provides that the Department must file "an abuse and neglect petition" within five working days of an emergency removal. Section 41-3-301(6), MCA. That was done here.

¶18 On March 29, 2013, the District Court set a hearing date and issued notice of the petition and hearing to Mother and Father. Mother and Father had already been notified of the reasons for the removal, and they were provided with information about the hearing as soon as it was available. Section 41-3-301(1), MCA. Although the hearing was initially set for April 18, 2013, 24 days after the filing of the petition, Mother and Father did not object to this initial delay. Section 41-3-432(1)(a), MCA. The hearing was continued twice on Father's motions. Three months passed between Father's second motion for a continuance on April 23, 2013, and the State's second request for a hearing on July 30, 2013. During this time, neither Mother nor Father objected to the delay.

¶19 ■ The hearing initially set for April 18, 2013, was not referred to as a show cause hearing; nevertheless, the notice provided to Mother and Father called upon them to "show cause" why the State's petition should not be granted. The hearing, by whatever name, provided them an initial appearance on the petition. The District Court appropriately held that dismissal of the petition for failure to

nominally request a show cause hearing would not serve to protect either L.N.'s best interests or the fundamental rights of Mother and Father, as it would only have resulted in the State filing a new petition and re-starting the clock on the show cause hearing.

¶20 Moreover, the distinction between a show cause hearing and a termination hearing, under the circumstances, was ultimately one without a difference. At a show cause hearing, a district court "may enter an order for the relief requested ... ." Section 41-3-432(7), MCA. When the show cause hearing was ultimately held on October 8, 2013, the District Court appropriately ordered the relief requested by the State in its initial petition. *See In re T.S.B.*, 2008 MT 23, ¶ 6, 341 Mont. 204, 177 P.3d 429 (affirming termination of parental rights at show cause hearing where initial petition requested both termination and determination that reasonable efforts are not required). Mother and Father were provided notice of the hearing, appointed counsel, permitted to engage in discovery, allowed to present testimony, and given the opportunity to cross-examine the State's witnesses. The District Court afforded Mother and Father fundamentally fair procedures.

¶21 *Issue Two: Whether the District Court abused its discretion when it terminated the parental rights of Mother and Father.*

¶22 Mother and Father argue the District Court abused its discretion by terminating their parental rights to L.N. without sufficient evidence regarding their current ability to care for her. They claim the State failed to show by clear and convincing evidence that the circumstances of the prior terminations were relevant to their ability to adequately care for L.N.

¶23 A district court may order termination of parental rights upon a finding of clear and convincing evidence that the parent has subjected a child to aggravated circumstances, including chronic and severe neglect. Sections 41-3-609(1)(d), -423(2)(a), MCA. A showing that the prior aggravated circumstances are relevant to the child at issue is not required. Section 41-3-423(2)(a), MCA. A district court may also order termination upon a finding of clear and convincing evidence that the parent's rights to another child have been terminated under circumstances relevant to the parent's ability to adequately care for the child at issue. Sections 41-3-609(1)(d), -423(2)(e), MCA. Under this section, a showing that the prior circumstances are relevant to the child at issue is required. Section 41-3-423(2)(e), MCA. If a district court makes either of these findings, the Department is not required to make reasonable efforts to provide reunification services. Section 41-

3-423(2), MCA.

¶24 ■ The District Court terminated the parental rights of Mother and Father based on the finding they had previously subjected J.N. and M.N. to the aggravated circumstances of chronic and severe neglect. This finding was not clearly erroneous. *In re M.N.*, ¶ 30. Under § 41-3-423(2)(a), MCA, this finding alone is a sufficient basis for the termination of parental rights without reasonable efforts at reunification. The District Court was not required to find that the circumstances of the prior termination were relevant to the parents' ability to care for L.N. in order to terminate their parental rights under § 41-3-423(2)(a), MCA. The District Court did not abuse its discretion when it terminated the parental rights of Mother and Father under § 41-3-423(2)(a), MCA.

¶25 The State alternatively petitioned for termination under § 41-3-423(2)(e), MCA. Although it was not required to, having already found sufficient grounds for termination under § 41-3-423(2)(a), MCA, the District Court also addressed this argument. The District Court found that the parental rights of Mother and Father to J.N., M.N., and R.N. were terminated due to chronic and severe neglect, the circumstances of which remained relevant to their ability to adequately care for L.N. This finding was based on testimony regarding Mother's inability to read and respond to L.N.'s cues, Father's demonstrated anger issues and passive involvement in parenting, unclean conditions in their home, and the exhaustive level of intervention previously provided without success. The District Court's finding that the circumstances of the prior terminations were relevant to Mother and Father's ability to care for L.N. was not clearly erroneous. The District Court did not abuse its discretion when it alternatively terminated the parental rights of Mother and Father under § 41-3-423(2)(e), MCA.

¶26 Affirmed.

JUSTICES WHEAT, COTTER, McKINNON, SHEA, BAKER and RICE concur.