DA 15-0199

## IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 292

IN THE MATTER OF

C.M., B.M., A.M., E.M., and D.M.,

Youths in Need of Care.

APPEAL FROM:  District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause Nos. ADN 14-40, ADN 14-41,
ADN 14-42, ADN 14-43, and ADN 14-44
Honorable Greg Pinski, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Elizabeth Thomas, Attorney at Law, Hebron, Ohio

Wade M. Zolynski, Chief Appellate Defender, Helena, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General, C. Mark Fowler, Bureau
Chief, Helena, Montana

John W. Parker, Cascade County Attorney, Ryan Ball, Deputy County
Attorney, Great Falls, Montana

Submitted on Briefs:  September 9, 2015
Decided:  October 13, 2015

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 J.M. (Mother) appeals an order entered by the Eighth Judicial District Court, Cascade County, terminating her parental rights to her five minor children, C.M., B.M., A.M., E.M., and D.M. We restate and address the following issues on appeal:

1. *Whether the District Court erred in concluding that Mother's conduct or condition that made her unfit to parent was unlikely to change within a reasonable time.*

2. *Whether the District Court abused its discretion in terminating Mother's parental rights.*

¶2 We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 On January 26, 2014, following reports to the Montana Department of Public Health and Human Services (Department) that children were being exposed to methamphetamine use, law enforcement officers discovered methamphetamine and drug paraphernalia in Mother's home. The officers located three "8 balls" of methamphetamine as well as "loaded syringes" within reach of the children. The Department removed the children, who ranged in age from 16 months to 9 years, from Mother's care and placed them with their respective natural fathers.[1] Four of the five children tested positively for methamphetamine exposure.

¶4 On January 30, 2014, Child Protection Specialist Becci Dellinger interviewed Mother. During the interview, Mother stated that she had used methamphetamine in the

---

[1] A.M. is the natural father of C.M., B.M., and E.M. M.M. is the natural father of A.M. J.H. is the natural father of D.M.

2

past. When asked about the drugs and drug paraphernalia found in her home, Mother said that she had let some people "crash" in her apartment. When asked why she had not kicked her boyfriend (T.B.) out of the apartment after learning of his methamphetamine use and distribution, Mother stated that T.B. was "slowing down" his use. Mother denied regularly using methamphetamine, stating that the only thing she needed help with was her bipolar disorder. During the interview, Dellinger noted that Mother had very noticeable black eyes. The next day, Dellinger interviewed five-year-old E.M. E.M. stated that T.B. kicks her mom and yells at her and when this happens E.M. goes into the kitchen to hide while C.M. and B.M. cry. E.M. stated "[B.M.] cries when [T.B.] hurts my mom" and "[T.B.] punches mommy in the tummy until she pukes." E.M. stated that she got an "owie" on her forearm from the needle T.B. used to poke her in the arm. When Dellinger informed Mother of E.M.'s disclosures, Mother stated that E.M. is a liar and that T.B. had never hurt her in any way.

¶5 After several continuances, the District Court held a show cause hearing on April 16, 2014. Mother stipulated to adjudication of the children as Youths in Need of Care and the court granted temporary legal custody to the Department pending a dispositional hearing. On May 7, 2014, the District Court held a dispositional hearing. Mother did not appear but was represented by counsel. The District Court ordered a treatment plan for Mother and awarded temporary legal custody to the Department for a period of six months to allow Mother time to successfully complete her treatment plan.

3

¶6    Mother's treatment plan required that she perform the following tasks to achieve the treatment plan's goals:  1) address her chemical dependency issues; 2) demonstrate effective parenting skills; 3) address her mental health issues; 4) maintain a safe and stable home environment; 5) attend supervised visitations with her children; and 6) sign releases of information for the Department and attend weekly meetings with her Child Protective Services (CPS) worker.

¶7    The District Court held a status hearing on August 6, 2014.  Mother did not appear but was represented by counsel.  The Department indicated that Mother had been disengaged with her treatment plan tasks for some time but recently seemed willing to participate.  The Department stated that it also was willing to reengage with Mother.

¶8    Two months later, Mother was arrested on federal charges for conspiracy to possess methamphetamine with intent to distribute and conspiracy to distribute.  She pleaded guilty and was awaiting sentencing at the time of the termination hearing.  On October 24, 2014, the Department filed a petition to terminate Mother's parental rights, alleging that she failed to successfully complete her treatment plan and was unlikely to change within a reasonable amount of time.

¶9    The District Court held a termination hearing on February 13, 2015.  The Department presented evidence reflecting Mother's non-compliance with her treatment plan.  The Department presented letters written by the two oldest children, A.M. and D.M.  In those letters, A.M. and D.M. expressed significant anger and sadness over Mother's drug use.  They wrote that they "do not feel safe" around their Mother and often

4

went hungry while living with her. A.M. expressed that she often was the one to care for the other children. The children's therapist, Robin Castle, testified that the children are traumatized from their time with Mother and did not want to live with her. Castle also testified that she thinks the children's goal is to "someday [have] some kind of relationship with [Mother]." Mother's attorney argued against termination and requested that temporary legal custody be extended or that the matter be dismissed with full custody granted to the fathers.

¶10 At the conclusion of the hearing, the District Court terminated Mother's parental rights. The court found that the Department made reasonable efforts to unify Mother with her children. Despite Mother's disengagement, the court found that the Department continued to assist and motivate her in completing her treatment plan by making many referrals to providers and by giving her supervised visits with her children. The court found that the Mother's conduct rendering her unfit was unlikely to change within a reasonable time because she had not completed chemical dependency treatment, had not addressed her mental health issues, had not changed the drug and domestic violence patterns within the home, had not ended her criminal activity, and had not established a safe and stable residence for the children. The court also considered Mother's pending incarceration and sentencing in federal court as a factor in determining that she would remain an unfit parent and unable to parent within a reasonable time. Mother appeals.

5

## STANDARDS OF REVIEW

¶11 We review a district court's decision to terminate parental rights for abuse of discretion. *In re L.N.*, 2014 MT 187, ¶ 12, 375 Mont. 480, 329 P.3d 598 (citations omitted). We review a district court's findings of fact for clear error and its conclusions of law for correctness. *L.N.*, ¶ 12. An appellant bears the burden of establishing that the district court's factual findings are clearly erroneous. *In re D.F.*, 2007 MT 147, ¶ 22, 337 Mont. 461, 161 P.3d 825 (citation omitted). "A factual finding is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been made." *In re C.J.M.*, 2012 MT 137, ¶ 10, 365 Mont. 298, 280 P.3d 899 (citation omitted).

## DISCUSSION

¶12 *1. Whether the District Court erred in concluding that Mother's conduct or condition that made her unfit to parent was unlikely to change within a reasonable time.*

¶13 A district court may terminate the parent-child legal relationship upon a finding established by clear and convincing evidence that: 1) the child has been adjudicated a youth in need of care, 2) an appropriate treatment plan has not been complied with or has not been successful, and 3) the conduct or condition of the parent rendering him or her unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA.

¶14 Mother first argues that she was not given a reasonable amount of time to complete her treatment plan and prove that she was capable of change. Mother points out that the Department petitioned for termination only five months after the treatment plan was entered; she argues that five months is an insufficient time to determine by clear and

6

convincing evidence if someone is capable of change, "especially in light of [her] addiction." Mother describes the strongly addictive nature of methamphetamine, explaining that it "alters the way the brain functions, making recovery and attempts at sobriety very difficult."

¶15 We consistently have held that "a parent who does not object to a treatment plan's goals or tasks waives the right to argue on appeal that the plan was not appropriate." *In re C.B.*, 2014 MT 4, ¶ 16, 373 Mont. 204, 316 P.3d 177 (citing *In re D.S.B.*, 2013 MT 112, ¶ 10, 370 Mont. 37, 300 P.3d 702) (holding that mother waived any argument regarding whether her treatment plan took into account the pain that was the root cause of her addiction because she failed to explicitly object to the plan below); *In re T.S.*, 2013 MT 274, ¶ 27, 372 Mont. 79, 310 P.3d 538 (holding that father waived any argument regarding whether treatment plan adequately addressed his hearing disability because he failed to object to the plan either at its inception or when the issue arose).

¶16 Mother did not raise any objection to the treatment plan's goals or tasks concerning her drug addiction. The plan provided a six-month deadline for completion of each task. To the extent that Mother challenges the amount of time the treatment plan allowed for her to address her drug addiction, she does so for the first time on appeal. Mother thus waived her claim of the treatment plan's inappropriate timeline and we decline to consider the issue.

¶17 Mother's second argument is that there was not clear and convincing evidence that she was unlikely to change within a reasonable time.

¶18 In order to conclude that the conduct or condition rendering a parent unfit is unlikely to change within a reasonable time, the district court must find that continuing the parent-child legal relationship "will likely result in continued abuse or neglect or that the conduct or the condition of the parents renders the parents unfit, unable, or unwilling to give the child adequate parental care." Section 41-3-609(2), MCA. In making this determination, the court must consider the following non-exclusive factors: emotional illness, mental illness, or mental deficiency of the parent; a history of violent behavior by the parent; excessive use of drugs or alcohol by the parent; and any present judicially ordered long-term confinement of the parent. Section 41-3-609(2), MCA. The court also must consider "past and present conduct of the parent." *In re J.C.*, 2003 MT 369, ¶ 11, 319 Mont. 112, 82 P.3d 900. A parent's past behavior may be considered in determining whether the parent would become a fit parent in the future. *In re Custody and Parental Rights of D.A.*, 2008 MT 247, ¶ 26, 344 Mont. 513, 189 P.3d 631.

¶19 Mother claims that despite her failed treatment plan, she was beginning the "road to recovery." She had completed two chemical dependency evaluations and applied for admission to the Montana Chemical Dependency Center (MCDC). Mother contends that it would have been appropriate to dismiss the petition and extend legal custody to allow her to continue her attempts at sobriety.

¶20 The State asserts that there was substantial evidence establishing that the condition rendering Mother unfit to parent was unlikely to change within a reasonable time. The State explains that Mother's failure to participate fully in chemical dependency treatment

8

and counseling has a negative effect on her ability to safely and appropriately parent. The State also argues that it was proper for the District Court to consider Mother's pending incarceration and its effect on her ability to parent. Finally, the State claims that the District Court appropriately considered the children's needs for a permanent, stable, and loving home in determining whether Mother's condition was likely to change within a reasonable time.

¶21    The District Court concluded that continuation of the parent-child relationship between Mother and her children likely will result in continued abuse and neglect of the children. In reaching its conclusion, the court relied on Mother's failure to address the issues outlined in her treatment plan. The court also considered Mother's pending federal criminal sentence. The court noted that federal drug crimes carry mandatory minimum sentences of several years and that Mother's upcoming confinement renders her unable to provide a residence, food, other necessities, and care for her children.

¶22    Mother's first tasks in her treatment plan required that she complete a chemical dependency evaluation, follow the evaluator's recommendations, and comply with random drug and alcohol testing. Mother was referred to random urinalysis (UA) sampling. Between January and October 2014, Mother was scheduled for 35 UAs. Mother failed to appear at 31 UAs. The other four UAs produced positive methamphetamine results. Theresa McCracken, a licensed addictions counselor, completed Mother's evaluation and recommended that she complete intensive outpatient treatment. Mother attended five group sessions between mid-May and mid-June 2014.

9

She also attended one individual session. Mother did not attend any treatment with McCracken after mid-June 2014. In August 2014, Julie Messerly, a licensed addictions counselor, diagnosed Mother with amphetamine, opiate, and alcohol dependence. She also recommended that Mother complete intensive outpatient treatment. Mother attended one individual session and one group session in September. Mother's UA test during that time was positive for amphetamine. Messerly referred Mother to inpatient treatment at MCDC. Mother had a bed date for September 29, 2014, but did not go because she complained of an ear infection. Mother had not, however, seen a doctor to have the ear infection diagnosed. Mother had another bed date for MCDC in October 2014. She attended inpatient treatment for four days, and was discharged early from the program for reasons that do not appear in the record.

¶23 Mother's second task in her treatment plan required her to successfully complete parenting classes, demonstrate the skills learned, and learn about the effects drug exposure has on children. She also had to demonstrate an understanding of how to keep her children safe, and she had to successfully complete an in-home parenting program if the case progressed to reunification. Dellinger testified that she was unable to refer Mother for parenting classes because Mother's mental and chemical dependency issues were so severe that they needed to be addressed first. Mother never completed chemical dependency treatment and therefore was never referred for an in-home parenting program.

¶24 Mother's third task required that she obtain a mental health evaluation and follow all recommendations once she achieved 30 days of sobriety. She was required to obtain domestic violence education and demonstrate an ability to keep her children safe from exposure to domestic violence. Mother did not achieve 30 days of sobriety but was referred to Angela Meyers, a licensed clinical professional counselor and licensed addictions counselor, for a mental health evaluation on March 12, 2014. Meyers was unable to make any diagnoses because of Mother's drug use. Meyers recommended that Mother attend the domestic violence women's group and individual counseling and complete a chemical dependency evaluation. Mother attended three appointments with Meyers, all of which were related to evaluations instead of counseling. She did not attend any appointments with Meyers after May 1, 2014.

¶25 Mother's fourth task in her treatment plan required that she have a stable residence, not allow drugs or paraphernalia in her home, and seek employment or otherwise have adequate income to meet her children's needs. Mother indicated that she had been living in an apartment rented to her by her mother. However, she was arrested in October 2014 on federal criminal drug charges and had been incarcerated for several months at the time of the hearing. Dellinger testified that most of the jobs Mother claimed to have held prior to her arrest were unverified and of unknown duration.

¶26 Mother's fifth and sixth tasks in her treatment plan required that she attend supervised visitations with her children, that she sign releases of information for the Department, and that she attend weekly meetings with her CPS worker. Prior to her

11

October 2014 incarceration, Mother attended most visits with her children. Dellinger testified that following one of Mother's visits, Dellinger found a syringe and 9-millimeter ammunition in Mother's coat. Mother's October 2014 incarceration made it impossible for her to attend subsequent supervised visitations with her children. CPS worker Dellinger testified that Mother's contact with Dellinger, aside from the visitations, was "poor."

¶27 Castle testified that the children were transitioning well into their fathers' homes. She stated that there remains significant trauma from when they lived with Mother and that they are afraid of living with her. Dellinger testified that continued custody by Mother would be damaging to the children and that termination of Mother's rights would be in the children's best interest.

¶28 It is the policy of the State of Montana to provide for the protection of children whose health and welfare are or may be adversely affected and further threatened by the conduct of those responsible for the children's care and protection. Section 41-3-101(1)(a), MCA. In determining whether to terminate a parent's rights, the courts give precedence to a child's best interests over parental rights. *In re Matter of E.K.*, 2001 MT 279, ¶ 33, 307 Mont. 328, 37 P.3d 690.

¶29 Our review of the record convinces us that the District Court appropriately gave primary consideration to the needs of the children. There is substantial evidence of Mother's infrequent and inconsistent efforts in completing the required tasks in her treatment plan. The District Court did not misapprehend the effect of the evidence in

12

reaching its conclusion that Mother is unlikely to change within a reasonable time. We acknowledge that methamphetamine addiction poses a steep challenge for parents trying to avoid termination of parental rights. A district court has discretion under the law to afford a parent more time to achieve sobriety where the parent is making progress. Sections 41-3-442(4)(a)(i), (6), MCA. In this case, however, Mother did not show meaningful signs of engaging in treatment, and then was arrested for additional drug offenses. Mother's pending incarceration and the substantial evidence of her continued drug use support the court's conclusion that continuing the parent-child legal relationship likely will result in continued abuse or neglect. We therefore affirm the District Court on this point.

¶30    *2.    Whether the District Court abused its discretion in terminating Mother's parental rights.*

¶31    Section 41-3-604(1), MCA, establishes a presumption that if a child has been in foster care for 15 of the most recent 22 months, the best interests of the child will be served by termination of parental rights. In such cases, the Department must file a petition to terminate parental rights unless:

> (a) the child is being cared for by a relative;

> (b) the department has not provided the services considered necessary for the safe return of the child to the child's home; or

> (c) the department has documented a compelling reason, available for court review, for determining that filing a petition to terminate parental rights would not be in the best interests of the child.

Section 41-3-604(1), MCA.

13

¶32 Mother argues that, "when looking at the situation as a whole," the District Court abused its discretion by terminating her parental rights. Mother asserts that the requirement that the State file a petition to terminate under § 41-3-604(1), MCA, does not apply because the children were placed with their respective fathers and not in the physical custody of the State. Mother relies on the discretionary language of § 41-3-609(1), MCA, to argue that because the court was not required to terminate her rights, it should have focused on the "totality of the circumstances and a balance of competing interests in determining if termination is appropriate when children are placed with a parent." Mother contends that because the children were doing well and thriving with their fathers, the District Court's finding that continuation of the parent-child relationship would result in continued abuse and neglect was speculative and unsupported by the evidence.

¶33 Mother urges that re-establishing the relationship between her and her children would be in their best interest "once she received treatment." Mother explains that her criminal sentence would require her to complete treatment "under the watchful eye of her federal probation officer" and create the potential to re-establish a safe and healthy relationship with her children. Mother refers to testimony from two of the fathers conceding that, before she became involved with drugs, Mother had done a "great job with the kids," provided a "great foundation," and was an "excellent mother." Mother also referred to therapist Castle's testimony that the children someday may want to

14

re-establish a relationship with Mother. For the foregoing reasons, Mother concludes that dismissal of the case with custody to the fathers was in the children's best interest.

¶34 The State argues that the District Court properly exercised its discretion in terminating Mother's parental rights. The State asserts that the law does not negate the basis to terminate Mother's parental rights simply by virtue of the children's placement with kin. The State argues that it was required to place the children with their non-offending parents under § 41-3-101(3), MCA, and that doing so "had no bearing on the Mother or her parental rights." The State contends that it sought to terminate Mother's rights because it proved that Mother failed to comply with her treatment plan and that her conduct or condition was unlikely to change within a reasonable time.

¶35 While Mother is correct that § 41-3-604, MCA, did not mandate that the Department seek termination, it does not follow that the court abused its discretion in terminating Mother's rights under § 41-3-609(1)(f), MCA. Mother acknowledges that the law did not require dismissing the petition once the children were placed with their fathers. *See In re L.V-B.*, 2014 MT 13, ¶ 19, 373 Mont. 344, 317 P.3d 191. When the circumstances set forth in § 41-3-609(1)(f), MCA, exist, the statute's permissive language gives district courts discretion in deciding whether to terminate parental rights. In this case, the facts warranted the State's petition under § 41-3-609(1)(f), MCA. It is undisputed that the children were adjudicated youths in need of care; Mother does not argue that she successfully completed her treatment plan; and there is clear and convincing evidence that the conduct or condition rendering Mother unfit to parent is

15

unlikely to change within a reasonable time. Given these circumstances, and giving paramount importance to the best interests of the children, the court was within its discretion in deciding to terminate Mother's rights. The court made factual findings supported by substantial evidence and correctly applied the law based on those findings. As such, there was no abuse of discretion. We therefore affirm.

## CONCLUSION

¶36 We conclude that the District Court did not abuse its discretion in terminating Mother's parental rights. The District Court's factual findings are supported by the record, and the court did not err in finding that the conduct or condition rendering Mother unfit to parent was unlikely to change within a reasonable time. We affirm the District Court's decision and order.


/S/ BETH BAKER

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ JIM RICE