DA 15-0386

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 2

IN THE MATTER OF:

C.W.E. and C.M.E.,

      Youths in Need of Care.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DN 13-07C and DN 13-06C
Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Meri Althauser, Montana Legal Justice, PLLC, Missoula, Montana

      For Appellee:

      Timothy C. Fox, Montana Attorney General, Michael S. Wellenstein, Assistant Attorney General, Helena, Montana

      Marty Lambert, Gallatin County Attorney, Bozeman, Montana

Submitted on Briefs: December 2, 2015
Decided: January 5, 2016

Filed:



_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1      T.E. (Mother) appeals two orders entered by the Eighteenth Judicial District Court, Gallatin County, terminating her parental rights to her two minor children, C.W.E. and C.M.E.  We affirm.

¶2      Mother presents the following issues for review:

> 1. *Did the District Court err in concluding that the conduct or condition that made Mother unfit to parent was unlikely to change within a reasonable time?*
>
> 2. *Did the District Court improperly rely on the statutory presumption contained in § 41-3-604(1), MCA, to conclude that termination of Mother's parental rights was in her children's best interests?*
>
> 3. *Did Mother receive ineffective assistance of counsel?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3      C.W.E., age seven, and C.M.E., age five, were removed from Mother's care in April 2013 after the Department of Public Health and Human Services (DPHHS) received seventeen referrals over a period of three years alleging Mother abused or neglected her children.  On July 30, 2013, upon Mother's stipulation, the District Court adjudicated C.W.E. and C.M.E. youths in need of care.  Also on July 30, 2013, the District Court granted DPHHS temporary legal custody of C.W.E. and C.M.E. for six months.  Temporary legal custody was later extended.  C.W.E. and C.M.E. have different fathers.  C.W.E. currently resides with his father, C.W., in Livingston, Montana, and C.M.E. currently resides with his father, D.E., in Sand Springs, Oklahoma.  On June 9, 2015, the District Court terminated Mother's parental rights, over two years after her children were removed from her care.

2

¶4	Before termination, DPHHS developed a treatment plan for Mother, which she and her counsel signed on July 30, 2013. The District Court approved Mother's treatment plan on August 21, 2013. The goal of the treatment plan was for Mother to address her chemical dependency issues in order for her to develop a healthy and positive relationship with her children. Summarized, the specific tasks outlined in Mother's treatment plan required her to: 1) complete a chemical dependency evaluation and any recommended treatment; 2) complete a psychological evaluation, including a parenting assessment, and follow any resulting recommendations; 3) maintain visitation with her children; 4) abstain from using drugs or alcohol; 5) provide DPHHS her medical history; 6) maintain contact with a Child Protective Services Specialist; 7) develop a plan for continued contact with her children if inpatient chemical dependency treatment is recommended; and 8) abstain from criminal activity.

¶5	In compliance with her treatment plan, Mother completed at least two chemical dependency evaluations on January 3, 2014, and March 30, 2014. In them, Mother admitted a significant history of drug and alcohol abuse. Mother admitted she began drinking in the sixth grade and that from age 29 to age 32 she drank one and a half liters of hard alcohol each day. Mother admitted she began using marijuana at age 12 and now used marijuana daily. Mother admitted she began using methamphetamine at age 15, began using methamphetamine intravenously at age 31, and continues to do so on a daily basis. Mother admitted a history of using various other drugs; including cocaine, opioids, ecstasy, mushrooms, sedatives, inhalants, and spice. Mother admitted she could not control her drug use and that she had tried to stop many times. Mother admitted she had

3

dealt drugs and traded sex for drugs. Mother had an abscess on her face, which she attributed to her methamphetamine use. Mother was unemployed and homeless. The Addiction Counselor recommended Mother complete inpatient treatment at Montana Chemical Dependency Center (MCDC). Mother was initially denied admission because she arrived intoxicated. Later, Mother was admitted to MCDC, but left after 10 days without completing treatment. Although Mother did complete an outpatient detoxification program at MCDC, Mother did not complete the recommended inpatient treatment required by her treatment plan.

¶6 Relevant to her other treatment plan tasks, Mother completed a psychological evaluation and parenting assessment with a psychologist, Dr. Bowman Smelko. Dr. Smelko identified that Mother had mental health issues that could be a result of her substance abuse, but that Mother would need to achieve a year of sobriety before he could establish an accurate mental health diagnosis for her. Mother missed several scheduled visits with her children. Mother admitted to drinking before supervised visits she did attend, and failed urinalysis tests administered directly after visiting her children. Mother missed 23 drug tests between July 14, 2013, and October 21, 2013. Mother either failed to report to tests, failed to test, or tested positive for substances 15 times between March 26, 2014, and February 12, 2015. Mother did not provide her medical history to DPHHS. After her children were removed, but before her parental rights were terminated, Mother was arrested three times. Mother was arrested once for DUI; once for assaulting two individuals, including a police officer; and once for possession of dangerous drugs (methamphetamine).

4

¶7 The District Court held a termination hearing on January 15, 2015, and continuations of that hearing were held on February 24, 2015, March 3, 2015, and March 9, 2015 (together, Termination Proceedings). Mother did not personally appear at the Termination Proceedings because a bench warrant had been issued for her arrest. She appeared by phone once, on March 3, 2015, but did not testify. During the Termination Proceedings, several witnesses testified, including Dr. Smelko. Dr. Smelko testified that, as of October 2013 when he first evaluated Mother, he believed that once Mother engaged in treatment, it would take her eighteen months to two years to eliminate her drug use. Dr. Smelko testified Mother's prognosis was poor and, if reunification with her children was pursued, Mother would need significant and intense in-home services to assist her on how to parent appropriately.

¶8 After the Termination Proceedings, the District Court issued findings of fact, conclusions of law, and an order terminating Mother's parental rights. The District Court concluded Mother's conduct or condition rendering her unfit was unlikely to change within a reasonable time because Mother has an extensive history and current issues related to untreated substance abuse, is homeless, and has no income. Further, the District Court concluded that "[e]ven if the Mother initiated inpatient treatment today, she could not begin to parent for at least one year—and then only with intensive in home services and support." The District Court applied the statutory presumption that if a child is in foster care for 15 of the most recent 22 months, termination of parental rights is presumed to be in the child's best interest. The District Court concluded termination was in the best interests of the children because Mother's children had been in "out of home

5

care since April 2013, well beyond the 15 of the last 22 months termination presumption time period." Mother appeals.

## STANDARD OF REVIEW

¶9 We review a district court's decision to terminate parental rights for an abuse of discretion. *In re L.N.*, 2014 MT 187, ¶ 12, 375 Mont. 480, 329 P.3d 598 (citation omitted). We review a district court's findings of fact for clear error and its conclusions of law for correctness. *In re L.N.*, ¶ 12 (citation omitted). An appellant bears the burden of establishing that the district court's factual findings are clearly erroneous. *In re D.F.*, 2007 MT 147, ¶ 22, 337 Mont. 461, 161 P.3d 825 (citation omitted). "A factual finding is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been made." *In re C.J.M.*, 2012 MT 137, ¶ 10, 365 Mont. 298, 280 P.3d 899 (citation omitted). An ineffective assistance of counsel claim presents mixed questions of law and fact which this Court reviews de novo. *Sartain v. State*, 2012 MT 164, ¶ 9, 365 Mont. 483, 285 P.3d 407.

## DISCUSSION

¶10 *1. Did the District Court err in concluding that the conduct or condition that made Mother unfit to parent was unlikely to change within a reasonable time?*

¶11 Mother argues that the District Court incorrectly concluded that the conduct or condition rendering her unfit was unlikely to change within a reasonable time. Criteria for terminating parental rights are outlined in § 41-3-609(1)(f), MCA, which requires: 1) the child be adjudicated a youth in need of care; 2) an appropriate treatment plan that

has been approved by the court has not been complied with by the parent or has not been successful; and 3) that the conduct or condition rendering the parent unfit must be unlikely to change within a reasonable time. The third criterion requires a court to assess the parent's past and present conduct. *In re A.S.*, 2006 MT 281, ¶ 48, 334 Mont. 280, 146 P.3d 778 (citations omitted). In determining whether the conduct or condition rendering a parent unfit is unlikely to change, the court is also required to consider a parent's "excessive use of intoxicating liquor or of a narcotic or dangerous drug that affects the parent's ability to care and provide for the child." Section 41-3-609(2)(c), MCA. The court "do[es] not have a crystal ball to look into to make this determination, so it must, to some extent, be based on a person's past conduct." *In re M.T.*, 2002 MT 174, ¶ 34, 310 Mont. 506, 51 P.3d 1141 (quotation and citations omitted). The "best interests of the child are of paramount concern in a parental rights termination proceeding and take precedence over the parental rights." *In re M.A.L.*, 2006 MT 299, ¶ 18, 334 Mont. 436, 148 P.3d 606 (citation omitted).

¶12 Here, Mother stipulated to her children being youths in need of care. A treatment plan was developed and signed by Mother and Mother's counsel. Mother did not comply with her treatment plan. The District Court concluded that Mother's persistent homelessness, unemployment, and extensive history of substance abuse made her unfit and that, even if she began addressing these issues, "she could not begin to parent for at least one year—and then only with intensive in home services and support." Our review of the District Court's record indicates Mother has admitted to a substantial, over 15-year history of drug use including daily abuse of alcohol, marijuana, and methamphetamine.

Since her children were removed, Mother has been arrested three times; two arrests were for alcohol and drug offenses. At the time of the Termination Proceedings, there was a warrant outstanding for Mother's arrest. There is clear and convincing evidence in the record that the conduct or condition rendering Mother unfit to parent is unlikely to change within a reasonable time. The District Court's findings are not clearly erroneous and are supported by substantial evidence. The District Court did not abuse its discretion in concluding Mother's conduct or condition was unlikely to change within a reasonable time.

¶13 *2. Did the District Court improperly rely on the statutory presumption contained in § 41-3-604(1), MCA, to conclude that termination of Mother's parental rights was in her children's best interests?*

¶14 Mother argues the District Court incorrectly applied the statutory presumption, contained in § 41-3-604(1), MCA, to conclude that termination of her parental rights was in the best interests of her children, because her children were placed with family, not in foster care. "[C]hildren need not be left to 'twist in the wind' when their parents fail to give priority to their stability and permanency." *In re T.S.*, 2013 MT 274, ¶ 30, 372 Mont. 79, 310 P.3d 538. If a child is in foster care under the physical custody of the state for 15 of the most recent 22 months, termination of parental rights is presumed to be in the child's best interests. Section 41-3-604(1), MCA. Mother argues her children were placed with family members, not in "foster care," and that the presumption in § 41-3-604(1), MCA, was inapplicable. Therefore, Mother contends the District Court improperly presumed termination of her parental rights was in her children's best interests.

¶15 "The granting of temporary legal custody to the department allows the department to place a child in care provided by a custodial or noncustodial parent, kinship foster home, youth foster home, youth group home, youth shelter care facility, or institution." Section 41-3-442(3), MCA. DPHHS may pursue these forms of foster care placement because it has legal custody of the child. Here, temporary legal custody was granted to DPHHS and authorized DPHHS to pursue any of the placement options found in § 41-3-442(3), MCA. Between the children's removal in April 2013 and Mother's termination in June 2015, DPHHS placed C.W.E. and C.M.E. in various kinship foster homes and then with their respective noncustodial fathers. Contrary to Mother's argument, the distinction between placement in a kinship foster home and other placement options does not alter the application of § 41-3-604(1), MCA. The presumption applies when a child is placed in kinship foster care because DPHHS has legal custody of the child. DPHHS had legal custody of Mother's children who were in foster care for more than 15 of the 22 months preceding termination. Therefore, the District Court correctly applied the presumption in § 41-3-604(1), MCA, to conclude termination of Mother's parental rights was in her children's best interests.

¶16 *3. Did Mother receive ineffective assistance of counsel?*

¶17 Mother argues her counsel rendered ineffective assistance by failing to "adequately communicate with her." Parents have a due process right to effective assistance of counsel in termination proceedings. *In re A.S.*, 2004 MT 62, ¶ 20, 320 Mont. 268, 87 P.3d 408. Whether assistance was effective requires review of counsel's training, experience, and advocacy. *In re B.M.*, 2010 MT 114, ¶ 22, 356 Mont. 327, 233

9

P.3d 338 (citation omitted). Ineffective assistance of counsel requires reversal only if the parent suffered prejudice. *In re B.M.*, ¶ 22 (citation omitted).

¶18 On January 15, 2015, Mother requested she be represented by alternative counsel in a faxed communication to her assigned counsel. Her assigned counsel notified the District Court of this request during the termination hearing held that same day and, as a result, that hearing was continued. Nevertheless, Mother's assigned counsel continued to represent Mother at the three continuations with no further objection. Mother does not challenge her assigned counsel's training or experience, but argues that "lack of communication" impacted her counsel's ability to advocate for Mother. Mother contends a failure to communicate resulted in no witnesses being called to testify on Mother's behalf at the Termination Proceedings, which, Mother argues, likely contributed to the District Court's decision to terminate her parental rights. However, Mother does not state what witnesses her attorney failed to call or what they might have testified to.

¶19 Mother herself did not personally appear at the Termination Proceedings because she was fearful of arrest. Mother does not draw a correlation between her counsel's purported lack of communication and any specific prejudice she suffered. The District Court relied on substantial evidence to determine that the statutory criteria to terminate Mother's parental rights were met: 1) that C.W.E. and C.M.E. were youths in need of care; 2) that an approved treatment plan was not complied with or successful; and 3) that the conduct or condition rendering Mother unfit was unlikely to change within a reasonable time. Mother has not demonstrated that her counsel was ineffective or that she was prejudiced as a result.

## CONCLUSION

¶20     Affirmed.


                                            /S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA